

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### No. PD-1802-09

---

**ERIC DESHON SORRELLS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**On Discretionary Review of
Case No. 13-07-00633-CR
of the Thirteenth Court of Appeals,
Travis County**

---

WOMACK, J., delivered the opinion of the unanimous Court.

A Travis County jury convicted the appellant, Eric Deshon Sorrells, of aggravated

robbery. On appeal, the Thirteenth Court of Appeals[1] found that the evidence was insufficient to

support a conviction of aggravated robbery, and reformed the judgment to reflect conviction of

the lesser-included offense of assault by threat. We granted the State's petition for discretionary

review on three grounds: (1) whether the Court of Appeals properly reviewed the sufficiency of

the evidence; (2) whether the Court of Appeals properly applied the law of parties; and (3) in the

---

[1] The appeal was transferred from the Third to the Thirteenth Court of Appeals.

alternative, whether the Court of Appeals properly reformed the judgment. We hold that the Court of Appeals erred in its review of the sufficiency of the evidence. We therefore need not address the State's second and third grounds. We will reverse the Court's decision and remand for consideration of the appellant's remaining claims.

## I. Background

The following factual background is abridged from the facts described by the Court of Appeals. In the early morning hours of January 30, 2005, Frances Reynolds waited on a curb outside an Austin nightclub for her boyfriend, Nathaniel Rice, to retrieve her car from a nearby parking lot. Reynolds testified that she leaned against a Mercedes SUV parked on the street. The appellant emerged from the club wearing a black and gray sweater and a black leather jacket. He told Reynolds to "get the f*** off the car" because she was damaging it. With gun in hand, the appellant struck Reynolds across the side of her head, and the two began scuffling. Shortly thereafter, Rice arrived. As Rice approached, the appellant turned, pulled back the slide of the gun, and said, "[D]o you have a problem with me, too?" Rice punched the appellant, and the two started fighting. A man wearing a blue "flannel-type" jacket then ran up to Rice and punched him. Rice fell to the ground and Reynolds went for help. When she returned, the altercation had ended. Rice told her that his jewelry had been stolen.

Rice testified that after retrieving Reynolds's car, he drove to the front of the club and saw three men standing near Reynolds. Rice saw Reynolds scuffling with the appellant. As Rice approached, the appellant pulled out a gun and "cocked it at [Rice]." Rice pushed the gun out of the way and swung at the appellant. The appellant struck back, hitting Rice with the gun. At that moment, a man wearing a flannel jacket punched Rice in the head. Rice was knocked to the

ground and was "jumped" by multiple people. At some point the beating ceased and the assailants dispersed. Rice then became aware that he was no longer wearing his lion medallion necklace, which he valued at approximately $1,000. When the police arrived moments later, Rice told them that his jewelry had been stolen.

Kevin Fritz, a friend of Reynolds and Rice, testified that he accompanied Rice to the parking lot to retrieve Reynolds's car. As they drove to the front of the club, Fritz saw Reynolds arguing with the appellant. Fritz followed as Rice approached the appellant. Upon noticing Rice, the appellant turned and pointed a gun at Rice. Rice took a swing at the appellant, and then another man came up behind Rice and hit him in the head. A third man joined the fight; he and the second man "jumped" Rice. Fritz then saw the appellant point the gun at Rice. Fritz ran up and pushed the appellant. The men then turned their attention from Rice and began fighting with Fritz. Someone hit Fritz with a gun; after being dazed and stumbling for a few seconds, Fritz looked up and saw the three men running into the club. At some point during the altercation, Fritz noticed Rice's lion medallion necklace on the ground.

Officer Charles Riley testified that he was stationed nearby when he was dispatched to the incident. Riley arrived on the scene within twenty or thirty seconds of the dispatch and saw several people in front of the club; everyone was being loud and yelling that "someone had taken something" and "someone had a gun." Riley learned that the gunman, a male wearing a black leather jacket, had gone inside the club. Riley ran into the alley behind the club and saw three people walking away from him down the alley. One of the three, Rachel Hardeman, turned and looked at Riley. Then she removed her hand from her jacket pocket and deposited an object into the side of a recycling receptacle. After the three were detained, Riley searched the receptacle and

found a gun. Riley also noticed that the black leather jacket Hardeman was wearing was too big

for her. Inside a pocket of the jacket, Riley found the lion medallion necklace. Both of the other

detainees were male. One, who would become appellant's co-defendant at trial, wore a blue

denim jacket. The other was the appellant, who wore a black and tan sweater but was not wearing

a jacket.

Reynolds, Rice, and Fritz did not identify Hardeman, but each of them identified the

appellant as the man who had been wearing the black leather jacket.[2]

In addition to the facts described by the Court of Appeals, we find the following three

pieces of testimony to be important as well. First, Sergeant Richard Shirley testified that he also

responded to the incident, but he attempted to gain entrance through the front of the club. As he

looked into the club from the front, he saw the appellant wearing a black leather jacket and

moving towards the back. When Shirley finally made it through the club and got to the alley

behind it, he saw that three individuals had been detained. He noticed that Hardeman "did have

what appeared to be the same jacket" that the appellant had been wearing as he moved toward the

back of the club.

Second, Rice identified the gun recovered by Officer Riley as the weapon pointed at him

by the appellant.

Third, Officer Brian Lloyd, called as a witness by the co-defendant's counsel, testified

without objection that Rice told him that the man with the gun and the black leather jacket took

Rice's necklace:

[CODEFENDANT'S COUNSEL]: Sir, you had occasion to talk to Nathaniel

---

[2] *Sorrells v. State*, 2009 WL 3766443 at *1-3 (Tex. App. – Corpus Christi November 12, 2009).

Rice; is that right, sir?

[LLOYD]: I did.

[CODEFENDANT'S COUNSEL]: Now, according to the best of your recollection, these events had just happened; had they not, sir?

[LLOYD]: Yes.

[CODEFENDANT'S COUNSEL]: Now, then, in talking to Nathaniel, Nathaniel told you, did he not, sir, that a black man had produced a gun?

[LLOYD]: Yes.

[CODEFENDANT'S COUNSEL]: That a black man had struck him with a gun?

[LLOYD]: Yes.

[CODEFENDANT'S COUNSEL]: He described that same black man as taking his gold necklace?

[LLOYD]: Yes.

[CODEFENDANT'S COUNSEL]: He described that black man as wearing a black leather jacket?

[LLOYD]: Yes.

## II. Standard of Review

In *Clayton v. State*[3] we described the standard of review appropriate for addressing the

sufficiency of evidence in cases involving circumstantial evidence and the drawing of inferences

by a jury:

> When we review a court of appeals's application of the legal sufficiency standard set out in *Jackson v. Virginia*[4], the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

---

[3] 235 S.W.3d 772 (Tex. Cr. App. 2007).

[4] 443 U.S. 307 (1979).

could have found the essential elements of the crime beyond a reasonable doubt. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. Our review of all of the evidence includes evidence that was properly and improperly admitted. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. Direct and circumstantial evidence are treated equally: Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.[5]

To prove the essential elements of aggravated robbery in this case, the State had to show that the appellant committed robbery as defined in Section 29.02 of the Penal Code, and used or exhibited a deadly weapon.[6] Under Section 29.02, the robbery in this case would be proved by evidence that, in the course of committing theft as defined in Chapter 31 of the Penal Code and with intent to obtain or maintain control of the property, the appellant intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death.[7] The phrase "in the course of committing theft" is defined by Section 29.01 of the Penal Code to mean "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."[8] A person commits theft under Chapter 31 if he unlawfully appropriates property with intent to deprive the owner of the property.[9]

---

[5] *Clayton*, 235 S.W.3d, at 778 (internal citations and quotation marks omitted).

[6] *See* TEX. PEN. CODE § 29.03(a)(2).

[7] *See* TEX. PEN. CODE § 29.02(a)(2).

[8] *See* TEX. PEN. CODE § 29.01(1).

[9] *See* TEX. PEN. CODE § 31.03(a).

### III. On Appeal

The Court of Appeals found that the evidence was insufficient to prove either that the appellant was the perpetrator of the theft, or that the assault was committed "in the course of committing theft."

With respect to the identity of the thief, the Court of Appeals found that "[b]ased on [the] circumstantial evidence, the jury could have reasonably inferred that the jacket worn by Hardeman belonged to [the appellant]."[10] Nevertheless, the Court found the evidence insufficient to prove that the appellant had possession of the necklace:

> At the time of [the appellant's] arrest, although the necklace was found in a jacket that the jury could have inferred belonged to [the appellant], neither the jacket, nor the necklace were found on his person; instead, Hardeman was wearing the jacket. This evidence is insufficient to show that [the appellant] had personal possession of the necklace at any point in time or that he asserted a distinct and personal right to it.[11]

With respect to the nexus between the assault and the theft, the Court recognized that the occurrence of a theft immediately after an assault typically supports an inference that the assault was intended to facilitate the theft.[12] However, the Court found that the inference was negated in the present case because the evidence revealed an alternative motive that could not be rationally disregarded:

> In the present case, the evidence revealed that [the appellant's] motive for the assault was to get Reynolds away from the silver Mercedes SUV and to keep Rice from interfering. In light of the fact that (1) there is no evidence that the appellant approached Reynolds in an attempt to appropriate her property; (2) the appellant

---

[10] *Sorrells*, 2009 WL 3766443, at *4.

[11] *Id.*, at *5.

[12] *Id.*, at *6 (citing *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Cr. App. 2002)).

did not approach Rice in an attempt to appropriate his necklace; (3) there is no evidence that the appellant was a party to theft; and (4) no words, actions, or conduct during the commission of the assault indicate that Rice's assault was committed to facilitate the appropriation of his necklace, a juror could not rationally disregard that [the appellant's] only motive was to move Reynolds from the vehicle and keep Rice from interfering.

## IV. Identity of the Thief

In *Clayton* we stated that an appellate court should determine whether necessary inferences are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[13] But in this case, the Court of Appeals analyzed only the evidence that Hardeman was wearing the appellant's jacket.

The Court overlooked at least two other critical pieces of evidence. To begin with, the gun was also in the appellant's jacket pocket before being removed and tossed by Hardeman. The gun was clearly in the appellant's possession and was used by him in the commission of the assault. The evidence that the gun was transferred from the appellant's possession during the assault to the appellant's jacket pocket after the assault strengthens the inference that the necklace got in the appellant's jacket pocket after also being in the appellant's possession.

Furthermore, viewed in the light most favorable to the verdict, Officer Lloyd's testimony provides direct evidence of the appellant's identity as the thief. During cross examination of Rice, the co-defendant's counsel asked Rice, "Do you recall telling the police that the man in the leather jacket had taken your necklaces? Do you recall telling them that?" Rice could not recall that, so the co-defendant's counsel called Officer Lloyd to relate, without objection, Rice's statement to him that the man with the gun and the black leather jacket had taken his necklace.

---

[13] 235 S.W.3d, at 778 (quoting *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Cr. App. 2007)).

During closing argument, the co-defendant's counsel reminded the jury of this testimony.

The Court of Appeals erred in failing to consider the combined and cumulative force of all of the admitted evidence. Viewing the evidence in the light most favorable to the verdict, a rational juror could have found beyond a reasonable doubt that the appellant committed the theft.

## V. Nexus Between Theft and Assault

In *Cooper v. State*, relied upon by the Court of Appeals in this case, we held that in a robbery case the nexus between the assault and the theft is "sufficiently proven if the State proves that the theft occurred immediately after the assault,"[14] and as a general rule, "a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft."[15] In *Cooper*, the evidence showed that the appellant was working on a fence with his uncle. The appellant struck his uncle from behind without warning and the two men began struggling on the ground. When his uncle released his grip on the appellant, the appellant stood, walked to his uncle's truck, and drove away. The appellant was found in a neighboring town about an hour later.[16] Despite the appellant's testimony that he was hallucinating and did not know what he was doing when he took the truck, we found the evidence "sufficient to support an inference that the assault was committed in the course of the commission of the theft."[17]

*Cooper* declined to answer comprehensively the question of "whether, and under what circumstances, evidence of a motive other than theft can negate the natural inference that arises

---

[14] 67 S.W.3d, at 223.

[15] *Id.*, at 224.

[16] *Id.*, at 222.

[17] *Id.*, at 224.

when a theft immediately follows an assault."[18] Limiting our holding to the facts of the case, in which the appellant claimed to be experiencing hallucinations, we "simply [held] that the inference will not be negated by evidence of an alternative motive that the jury could rationally disregard."[19]

In this case the Court of Appeals seems to have read *Cooper* to hold the inverse: any inference that the assault was intended to facilitate the theft was negated because there was evidence of an alternative motive which the jury could not rationally disregard.[20] But we need not address the Court's extension of *Cooper* because the Court erred in concluding that the negation of such an inference results in insufficient evidence.

The appellant's motive in committing the assault – whether "[the appellant's] assault of Rice was intended to facilitate the theft"[21] – may be probative of the nexus element, but it is not itself an element of the offense of robbery. The nexus element is that the assault was committed "in the course of committing theft," which is defined as "conduct that occurs in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of theft."[22]

The State has always been able to prove robbery by force or threats committed before the theft or attempted theft. The drafters of our present Penal Code pointed this out in their

---

[18] *Id*.

[19] *Id.*

[20] *Sorrells*, 2009 WL 3766443, at *6, 2009 Tex. App. LEXIS, at *19-21.

[21] *Id*.

[22] TEX. PEN. CODE § 29.01(1).

comments to the present robbery statute:

> Section 29.02 is broader in scope than the [former] robbery offense … because it applies to violence used or threatened 'in the course of committing theft,' which is defined in Section 29.01 to include not only *violent conduct antecedent to a completed theft*, but also violence accompanying an escape immediately subsequent to a completed or attempted theft. … The … use or threat of force in escaping … broadens the scope of robbery. Here, too, the conduct is as dangerous as *force or threats antecedent to the theft*."[23]

This case is one of force antecedent to, or during, the theft. Based on Rice's testimony that the necklace was missing immediately after the assault, and Fritz's testimony that he saw the necklace on the ground during the course of the assault, a rational juror could draw a reasonable inference that the assault and the theft occurred simultaneously, and thus the assault was committed during the commission of theft.

The evidence in this case was thus sufficient to prove both that the appellant committed theft, and that he committed assault in the course of committing theft. We therefore reverse the decision of the Court of Appeals and remand the case to that Court for consideration of the appellant's remaining claims.

Delivered June 22, 2011.
Publish.

---

[23] STATE BAR COMMITTEE ON REVISION OF THE PENAL CODE, TEXAS PENAL CODE: A PROPOSED REVISION, Committee Comment to Chapter 29 (1970).