**Affirmed and Opinion filed June 21, 2012.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-11-00632-CR,**
**NO. 14-11-00639-CR**

---

**QUINCY JEJUAN NEELYS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1284103, 1284540**

---

## OPINION

Appellant Quincy Jean Neelys appeals his convictions for robbery and aggravated assault. In appealing his conviction for robbery, appellant challenges the sufficiency of the evidence to support the conviction and asserts he was entitled to a jury instruction on

a lesser-included offense of theft. In appealing the conviction for aggravated assault, appellant asserts the trial court erred in cumulating his sentences for both the aggravated assault and robbery convictions, resulting in double jeopardy. Appellant also asserts error in the admission of certain evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by two, separate indictments with the felony offenses of aggravated robbery and aggravated assault, stemming from incidents that occurred on two different occasions.

### *Robbery (Cause Number 1284103)*

Appellant pleaded "not guilty" to the charge for aggravated robbery and proceeded to trial on July 18, 2011, in cause number 1284103. At trial, both appellant and his sister, the complainant, testified. It is undisputed that appellant went to his sister's home on November 3, 2010, to retrieve a check. According to the undisputed evidence, the two siblings engaged in an altercation over the check, which apparently was in their mother's possession. According to the sister, appellant pulled a firearm from the waistband of his pants, placed the firearm against her forehead, and threatened to kill her in front of her children. The sister testified that appellant grabbed her cell phone as she was attempting to call for help; appellant fled from her home with the phone. A witness saw appellant leaving the sister's home and observed appellant putting a hammer in his jacket.

Although appellant denied brandishing a firearm, he admitted that he "snatched" the cell phone from his sister's hand as he left and intended to return it to his sister. Appellant claimed that he was just playing with his sister and that he never had a chance to return the cell phone because he was arrested four days later.

The trial court charged the jury, giving instructions on aggravated robbery and the lesser-included offenses of robbery and theft from the person of another. The jury found appellant guilty of the lesser-included offense of robbery.

2

At the punishment phase of trial, all of the evidence from the guilt-innocence phase was entered into evidence. Additionally, an officer testified about being dispatched to a home on November 7, 2010, in response to calls about an assault in progress. Through a window, the officer observed appellant, holding two hammers, and a then-unidentified bleeding woman, reaching through the broken window with her hand, asking for help. Officers arrested appellant. Appellant had blood on his clothing and hands. Investigating officers recovered three hammers and a bottle of lighter fluid at the scene. They observed a large amount of blood smeared or spattered throughout the home, which was in disarray. Photos of appellant taken at the scene as well as photos taken of the scene were admitted into evidence in the punishment phase.

Appellant's aunt, the bleeding woman that police observed through the window, testified at the punishment hearing about the events surrounding the charged offenses. She testified that on November 7, 2010, appellant threatened to kill her, struck her repeatedly with two hammers, forced her to take pain medication, squirted her body with lighter fluid, attempted to light the gas stove in the home, and burned her with hot water in a bathtub before law enforcement officers arrived on the scene to help her. She sustained a number of chemical burns and injuries requiring multiple surgeries.

Appellant also testified at the punishment hearing, despite counsel's advice not to testify, and claimed that he caused his aunt's injuries to her face with his fists or by "ramming" her head into a wall in self-defense because she "rushed" at him. According to appellant, she started the fight when she told him to leave her apartment. He claimed that the burns she received were actually bed sores. Appellant denied hitting his aunt with hammers, but admitted he was holding a hammer when the officers arrived.

Appellant's older cousin testified that on one occasion she heard him threaten to kill military members, white people, and police officers. Appellant was sentenced to twenty years' confinement for the robbery in cause number 1284103.

3

*Aggravated Assault (Cause Number 1284540)*

Appellant pleaded "not guilty" to the charge of aggravated assault and proceeded to trial on July 22, 2011, in cause number 1284540. At trial, appellant's aunt, the complainant, testified that appellant had been staying in her apartment during the week before the incident. On the morning of November 7, 2010, appellant attended church with his aunt, who is a pastor. The aunt remained at church while appellant returned to the apartment with a key his aunt had loaned him. When the aunt returned to the apartment, she reminded appellant that he could not stay with her past one week. According to the aunt, after this conversation, appellant threatened to kill her, exhibited two hammers, forced her onto a bed, and forced her to take pain medications. The aunt claimed to have spat out the pills when appellant left the room. The aunt described how appellant returned to the room and squirted lighter fluid on her body, causing burns to her body. The aunt testified that appellant hit her with the hammers and forced her into a bathtub, where he poured hot water on her and choked her. Appellant ordered his aunt to crawl to her bedroom; appellant then attempted to ignite the gas stove in the apartment. The aunt claimed to have escaped to the living room and attempted to exit through a window while appellant returned and struck her with the hammers and kicked her.

People outside were able to see through the window inside the apartment and summoned help. Responding officers saw appellant inside the apartment with hammers in his hands and blood on his clothing. Officers arrested appellant immediately and searched the scene for evidence.

The jury found appellant guilty as charged. At the punishment hearing, the State sought to call appellant's sister to testify about the incident on November 3, 2010, for which appellant had been convicted of robbery in cause number 1284103. Appellant objected to the testimony as extraneous-offense evidence and a violation of double jeopardy constitutional protections. The trial court overruled the objections, stating that because the jury did not convict appellant of aggravated robbery, the sister could not

4

testify about appellant's use of a gun in commission of the robbery. The sister testified about the events in her home on November 3, 2010, in which appellant took her cell phone; she did not refer to a gun in her testimony. Appellant's cousin also testified about appellant's threats to kill police officers, military members, and white people.

Appellant was sentenced to twenty years' confinement for aggravated assault. The State moved to cumulate the sentences in both cause numbers. The trial court granted the motion over appellant's objections. Appellant now challenges his convictions in each case.

ANALYSIS

Appellant has filed separate appellate briefs relating to the two separate cause numbers and the respective appeals. Regarding the appeal from appellant's robbery conviction in cause number 1284103, appellant challenges the sufficiency of the evidence to support his conviction and claims he was entitled to an instruction on the lesser-included offense of theft. In his appeal from the conviction for aggravated assault in cause number 1284540, appellant claims the trial court erred in the following ways: (1) improperly ordering his sentences to be served cumulatively in violation of the constitutional prohibition against double jeopardy; (2) improperly admitting into evidence testimony with "pervasive religious tones"; and (3) improperly admitting into evidence a photograph in which appellant is depicted wearing shackles.

**Is the evidence sufficient to support a conviction of robbery?**

In his first issue of appellant's appeal from cause number 1284103, appellant asserts the State offered no evidence that appellant intended to deprive his sister, the complainant, of her cell phone. In evaluating a sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be

5

overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain and maintain control of property, that person "(1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02 (West 2011). The phrase "in the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code Ann. § 29.01 (West 2011). A person commits the offense of theft if that person unlawfully appropriates property with intent to deprive the owner of the property. Tex. Penal Code Ann. § 31.03(a) (West 2011). Appellant does not dispute that he took the phone and does not challenge the jury's finding that he threatened his sister.

Appellant asserts that there is no evidence that he intended to deprive his sister of the phone because the altercation stemmed from the check and not the phone. According to appellant, there is no nexus between the theft of the cell phone and his threats because the altercation, during which appellant threatened his sister, occurred over a check. For support, appellant relies on the case of *Sorrells v. State*, 343 S.W.3d 152, 158 (Tex. Crim. App. 2011). Generally, as noted in *Sorrells*, a theft occurring immediately after an

6

assault will support an inference that the assault was intended to facilitate the theft. *Id.* at 157. While an accused's motive in committing an assault may be probative of the nexus element, the nexus element is not an element of an offense of robbery. *Id.* at 158. In applying *Sorrells* to the case at hand, we note that the nexus element requires that the threats were made "in the course of committing theft," which is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *See* Tex. Penal Code Ann. § 29.01(1); *Sorrells*, 343 S.W.3d at 158. Because the theft of the cell phone occurred immediately after appellant's threats to his sister, the evidence is sufficient to support the jury's reasonable inference that the threats were made in the course of committing theft. *See* Tex. Penal Code Ann. § 29.01(1); *Sorrells*, 343 S.W.3d at 157.

Appellant asserts there is no evidence of what he planned to do with the cell phone beyond his own testimony that he intended to return it. Criminal intent may be inferred from an accused's acts, words, or conduct, as well as the surrounding circumstances of the acts. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). In determining that appellant did not intend to return the phone, the jury was entitled to draw inferences from appellant's conduct, namely that he forcibly took the cell phone from his sister's hands and immediately fled from her home with the phone. *See Ellis v. State*, 877 S.W.2d 380, 383 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). A rational juror could have found that appellant had no intention of returning the phone, given that he did not do so during the four days between the time he took the phone and his arrest. *See id.* at 383; *Williams v. State*, 770 S.W.2d 948, 949 (Tex. App.—Houston [1st Dist.] 1989, no pet.) (concluding that sufficient evidence supported conviction for theft from a person when the record reflects an accused took a necklace and fled without making any efforts to return the necklace). The evidence is sufficient to support appellant's conviction for robbery. *See id.* We overrule appellant's first issue related to cause number 1284103.

7

**Was appellant entitled to a an instruction on theft as a lesser-included offense?**

In appellant's second issue, as relevant to his appeal from cause number 1284103, appellant asserts that the jury should have been charged with an instruction on theft as a lesser-included offense. He claims that although the trial court granted his request and instructed the jury on the lesser-included offense of theft from a person, the trial court improperly denied his request for an instruction on theft as a lesser-included offense of robbery.

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the charged offense only in the respect that a less culpable mental states suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006).

An accused is entitled to an instruction on every defensive issue raised by the evidence. *Id.* art. 36.14 (West 2007). To warrant a jury-charge instruction on a lesser-included offense, a defendant must demonstrate that (1) the elements of the lesser offense are contained within the proof necessary to establish the charged offense as pleaded in the State's indictment, and (2) the record contains some evidence by which a rational jury could conclude that if the accused is guilty, then the accused is guilty of only the lesser offense and not the greater offense. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007 (applying "cognate-pleadings approach" as sole test in first step in determining whether a party is entitled to a lesser-offense instruction).

As reflected in the indictment, appellant was charged with unlawfully, while in the course of committing theft of property owned by the sister, and with intent to obtain and

maintain control of the property, intentionally and knowingly threatening and placing the sister in fear of imminent bodily injury and death.[1] *See* Tex. Penal Code Ann. § 29.02. Theft is a lesser-included offense of both robbery and aggravated robbery. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). The statutory elements of aggravated robbery include the commission of robbery, and an element of robbery includes the commission of a theft. *See* Tex. Penal Code Ann. §§ 29.02 (robbery), 29.03 (aggravated robbery), 31.03 (theft).

We next consider whether there is some evidence that appellant is not guilty of robbery, but guilty of only theft. *See Hall*, 225 S.W.3d at 536. A person commits the offense of theft if that person unlawfully appropriates property with intent to deprive the owner of the property. Tex. Penal Code Ann. § 31.03(a). Theft becomes a third-degree felony if the property is taken from the person of another. Tex. Penal Code Ann. § 31.03(e)(4)(B). Theft from a person requires that the property was taken from the physical body of the person or from the person's grasp or immediate possession. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). A person commits robbery if, "in the course of committing theft" and "with intent to obtain or maintain control of the property," that person "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02(a).

The undisputed evidence in the record reflects that appellant grabbed his sister's cell phone from her hand and immediately fled from the scene with it and without her permission to take it. *See* Tex. Penal Code Ann. § 31.03(e)(4)(B). Based on this evidence that appellant took the phone from his sister's hand, an instruction on theft from a person was warranted as a lesser-included offense, and the trial court properly included this instruction. *See Earls*, 707 S.W.2d at 85. Given the same undisputed evidence, we find no merit in appellant's claims that the evidence supported only an instruction for theft and not an instruction for theft from a person. *See id.* Although appellant claims

[1] The indictment also alleged that appellant used a firearm, a deadly weapon, in the commission of the offense.

9

that the charging instrument did not allege elements to support an instruction on theft from a person by alleging the means by which theft occurred, the indictment specifically charged appellant "while in the course of committing theft," thus, implicating the necessity of proof of those theft elements, by whatever means theft may be committed. *See Earls*, 707 S.W.2d at 84. We overrule appellant's second issue in cause number 1284103.

**Did the trial court err in cumulating the sentences for both convictions, implicating double jeopardy?**

In his first issue, appellant challenges the trial court's order cumulating the sentences in both cause numbers, asserting that the trial court violated the constitutional prohibition of double jeopardy. Appellant acknowledges in his appellate brief that the trial court did not err in allowing the jury in the robbery case to hear evidence regarding the aggravated assault during the punishment phase, and vice versa. *See Ex parte Broxton*, 888 S.W.2d 23, 28 (Tex. Crim. App. 1994 (providing that a defendant is not punished for unadjudicated offenses presented in the punishment phase of trial and that double jeopardy does not bar subsequent prosecution of those offenses); *McDuff v. State*, 939 S.W.2d 607, 621 (Tex. Crim. App. 1997) (providing that double jeopardy is not implicated when facts of instant case were admitted into evidence as extraneous offense in a previous trial to secure the death penalty). Appellant challenges only the trial court's order cumulating the sentences as violating the constitutional protections against double jeopardy.

The law recognizes three kinds of double-jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). Appellant argues that each of the two, separate offenses had been factored into the punishment hearings on the respective, separate convictions, and the trial court's decision to cumulate the sentences amounted to a third time that the offenses were considered and punished, effectively enlarging his

sentence in violation of the Double Jeopardy Clause of the United States Constitution. A double-jeopardy claim of multiple punishments for the same offense arises in two contexts: (1) when the greater offense also meets the elements of a lesser-included offense such that the same conduct is punished twice; and (2) punishing the same criminal act twice under two distinct statutes when the legislature intended for the conduct to be punished only once. *Id.*

When a defendant has been convicted in two or more cases, the trial court has discretion in subsequent cases to order that the sentences imposed run consecutively or concurrently. Tex. Code Crim. Proc. Ann. art. 42.08 (West 2011). Section 3.03 of the Texas Penal Code, entitled "Sentences for Offenses Arising Out of Same Criminal Episode," limits this discretion and requires that, with exceptions not applicable in the instant case, an accused's sentences shall run concurrently when the accused is found guilty of more than one offense arising from the same criminal episode that is prosecuted in a single criminal action. Tex. Penal Code Ann. § 3.03(a) (West 2011). A "criminal episode," is defined as

> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> > (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
> >
> > (2) the offenses are the repeated commission of the same or similar offenses.

Tex. Penal Code Ann. § 3.01 (West 2011). A "single criminal action" refers to a single trial or plea proceeding. *See La Porte v. State*, 840 S.W.2d 412, 414 (Tex. Crim. App. 1992).

For appellant to have been entitled to concurrent sentences, he must have established that he was prosecuted in a single criminal action. *See Duran v. State*, 844 S.W.2d 745, 746 (Tex. Crim. App. 1992) (providing that the record did not support a

conclusion that a single criminal action occurred for an appellant that was charged by two separate indictments with two separate offenses); *see also Duran v. State*, 844 S.W.2d 745, 746 (Tex. Crim. App. 1992) (Baird, J., concurring) (providing that an accused must demonstrate that the offenses arose from the same criminal episode and that the accused was prosecuted in a single criminal action to be entitled to concurrent sentences). The record reflects that the charge for aggravated robbery arose from an incident occurring on November 3, 2010, while the charge for aggravated assault arose from an incident that occurred on November 7, 2010. The two charged offenses are not related and were prosecuted in separate criminal actions. Appellant has neither demonstrated nor argued that the charged offenses were pursuant to the same transaction or connected to a common scheme or plan or the same or similar offenses. *See* Tex. Penal Code Ann. § 3.01.

Appellant argues that the conviction for aggravated assault and the conviction for robbery share many of the same elements. But aggravated assault and robbery are separate offenses that occurred in separate criminal episodes; each offense required elements that the other did not. *See Langs*, 183 S.W.3d at 687 (rejecting a "same elements" analysis under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), because each of the offenses required an element that the other did not); *see also* Tex. Penal Code Ann. § 29.02 (defining "robbery" as when a person "in the course of committing theft" and "with intent to obtain or maintain control of the property," "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death"); Tex. Penal Code Ann. § 22.02(a) (West 2011) (defining "aggravated assault" as when a person uses or exhibits a deadly weapon during commission of the offense of assault, as defined by section 22.01(a)(1) (West 2011), in which a person intentionally, knowingly, or recklessly causes bodily injury to another). When, as in this case, the evidence establishes the commission of "distinct and separate offenses," then there is no violation of the double-jeopardy prohibition of multiple punishments. *See Langs*, 183 S.W.3d at 685; *Lancaster v. State*, 324 S.W.3d 217, 222

(Tex. App.—Waco 2010, pet. ref'd). The Double Jeopardy Clause serves as a barrier to legislative attempts to authorize retrial after an acquittal or conviction, but it does not serve to intrude on the legislature's prerogatives in fashioning the statutory framework that governs a trial court's sentencing decision. *Ex Parte Herron*, 790 S.W.2d 623, 625 (Tex. Crim. App. 1990); *Alvarado v. State*, 816 S.W.2d 792, 799 (Tex. App.—Corpus Christi 1991, *affirmed as modified by*, 840 S.W.2d 442 (Tex. Crim. App. 1992). We conclude the trial court could impose consecutive sentences on appellant for the aggravated assault and the robbery, each arising out of separate criminal episodes and tried in separate criminal actions, without violating the double-jeopardy prohibition against multiple punishments. *See Langs*, 183 S.W.3d at 688; *Lancaster*, 324 S.W.3d at 223; *Alvarado*, 816 S.W.2d at 798–800; *see also* Tex. Penal Code Ann. § 3.01; *LaPorte*, 840 S.W.2d at 414. Accordingly, we overrule appellant's first issue in cause number 1284540.

**Did appellant preserve error as to his complaint that the trial court erroneously allowed testimony with "religious tones"?**

In his second issue from the appeal of cause number 1284540, appellant asserts that his aunt's testimony contained "pervasive religious tones" that operated to improperly bolster her credibility and prejudice appellant's due process rights. Appellant characterizes the aunt's testimony as involving frequent statements reflecting the strength and prominence of her religious beliefs, invocations to a higher power, claims that a higher power assisted and communicated with her, and claims that a higher power willed punishment on appellant.

For appellant to have preserved this complaint for appellate review, it was incumbent upon him to have made a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. *See* Tex. R. App. P. 33.1(a); *Saldano v.* State, 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002). With few exceptions, that are not applicable in the instant case, even constitutional complaints may be waived

13

by failure to raise a timely objection in the trial court. *See Anderson v. State*, 301 S.W.3d 276, 281 (Tex. Crim. App. 2009) (providing that a defendant failed to assert due-process objection in trial court). Not once in the entire trial did appellant object to any religious references or move to strike any testimony or assert the complaints about "religious tones" that he now brings on appeal. Appellant has therefore failed to preserve error on this issue. *See* Tex. R. App. P. 33.1(a). We overrule appellant's second issue in cause number 1284540.

**Did the trial court err in admitting into evidence a photograph of appellant in shackles?**

In appellant's third issue in his appeal from cause number 1284540, appellant asserts the trial court erred in admitting into evidence a photograph depicting appellant's handcuffed hand and arm because the photograph, State's Exhibit 47, showed that appellant was in custody. The State first tendered all of the proposed photographic evidence to appellant's defense counsel, and then the parties discussed at the bench appellant's objections to various photos. Appellant objected to three photographs, and the State withdrew two of them, leaving only Exhibit 47. As relevant to his appeal, the trial court overruled appellant's objections to this exhibit, noting that the photograph showed a wound to appellant's arm and that the State intended to call a law enforcement officer to testify about appellant being in custody at the time the photograph was taken.

We review a trial court's admission of photographs into evidence under an abuse-of-discretion standard. *See Penry v. State*, 903 S.W.2d 715, 751 (Tex. Crim. App. 1995). Absent an exceptional circumstance or a manifest need for physical restraint, requiring an accused to wear handcuffs before the jury at trial infringes on the accused's constitutional presumption of innocence. *Lucas v. State*, 791 S.W.2d 35, 38 (Tex. Crim. App. 1989). Although appellant was not handcuffed in front of the jury, appellant asserts that the photo (Exhibit 47) eroded the presumption of his innocence and deprived him of his right to a fair trial because it showed him in custody. The scene of a crime may be properly

14

shown to a jury as evidence, but the State also must observe the rule that the defendant be brought to the jury "unfettered." *See Lucas*, 791 S.W.2d at 38.

As reflected in the record, when the State questioned a responding law enforcement officer about the scene and Exhibit 47, the officer already had testified that appellant was taken into custody immediately upon the officer's arrival at the apartment when they discovered appellant, hammers in hand, standing over a bleeding woman. Officers took photographs of both appellant and the scene at that time. *See Avila v. State*, 15 S.W.3d 568, 574–75 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (providing that photograph of an accused in handcuffs was admissible because record reflected that the accused was in custody and subject to physical restraint when the photograph was taken). Because appellant was in custody, he was subject to physical restraints. *See id.* Being subject to physical restraint is not the same as appearing before the jury in restraints. *Id.* The jury did not see appellant wearing handcuffs during trial, and, by admitting the photograph into evidence, the trial court did not violate the rule that an accused appear before the jury unfettered. *See Lucas*, 791 S.W.2d at 38; *Avila*, 15 S.W.3d at 575.

Additionally, appellant did not object to the officer's testimony about the blood shown on appellant's knuckles, hand, and arm. Appellant's trial counsel briefly cross-examined the officer specifically about the abrasion on appellant's arm as shown in Exhibit 47. When, as in this case, a verbal description of the scene depicted in the photograph is admissible, a photograph depicting the same content is also admissible. *See Lucas*, 791 S.W.2d at 55. The officer's testimony on both direct- and cross-examination focused on appellant's abrasions and not the handcuffs. *See id.* at 56. Likewise, such a photograph is admissible to reflect appellant's appearance on the day of the offense and does not rise to a level of a violation of appellant's constitutional right to be presumed innocent. *See Davis v. State*, 786 S.W.2d 77, 78 (Tex. App.—Beaumont 1990, pet. ref'd) (providing that mug shot of an accused depicting him in custody with a "Jefferson County Sherriff's Department" sign and an inmate number was admissible to

15

accurately depict the accused's appearance at the time of the arrest a few days after the charged offense occurred). The trial court did not err in admitting the photograph over appellant's objection. *See Lucas*, 791 S.W.2d at 38; *Avila*, 15 S.W.3d at 575. Accordingly, we overrule appellant's third issue in cause number 1284540.

Having overruled each of appellant's issues in cause numbers 1284103 and 1284540, we affirm the trial court's judgment in each case.

/s/          Kem Thompson Frost
              Justice

Panel consists of Justices Frost, McCally, and Mirabal.[*]

Publish — TEX. R. APP. P. 47.2(b).

---

[*]Senior Justice Margaret Garner Mirabal sitting by assignment.