

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00394-CR

WILLIAM ERNESTO PACHECO                                APPELLANT
PERAZA A/K/A WILLIAM ERNESTO
PERAZAPACHECO

V.

THE STATE OF TEXAS                                          STATE

------------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

------------

### MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

Appellant William Ernesto Pacheco Peraza a/k/a William Ernesto PerazaPacheco waived his right to a jury trial and pleaded not guilty to assault of a family member with a previous conviction. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A) (West 2011). The trial court found William guilty and, after a

---

[1]*See* Tex. R. App. P. 47.4.

punishment hearing, sentenced him to five years' confinement in the Institutional Division of TDCJ. In one issue on appeal, William contends that the evidence is insufficient to support his conviction. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

William and Emma Peraza married in 2006. They moved to Texas that same year after Emma was diagnosed with leukemia. They have two children together. In 2007 and again in 2008, William pleaded guilty to and was convicted of assault against Emma. On June 28, 2009, William and Emma got into an argument over a missed truck payment. Based on what transpired during their argument, William was charged with assault of a family member with a previous conviction.

At trial, Emma testified that a couple of weeks prior to the incident, she had moved out of the house she shared with William because he hit her. She and the children moved in with her parents. After William called her and agreed to get counseling, she and the children moved back into the house. The day that Emma moved back into the house, she told William that she had used the money for their monthly truck payment for her chemotherapy. William got upset, and he began throwing things and yelling at Emma. He pushed her down on the couch and hit her in the face multiple times around the eye area. He left the room briefly, returning with a pair of scissors. Emma testified that he tried to stab her with the scissors but stopped when their children entered the room. Emma

asked William to let her and the children leave the house, and she promised not to call the police. William left the house.

Emma did not have a phone so she went next door to ask if she could use her neighbors' phone to call the police. Both her next-door neighbors and her neighbor across the street, Neal Moss, refused to allow Emma to use their phones. Eventually, another neighbor let Emma borrow her phone, and Emma called the police. The police arrived about thirty to forty-five minutes after the incident. The responding officer, Officer Julisa Flores, took photos of Emma's injuries. Officer Flores testified that Emma was upset and crying when the officer arrived. Officer Flores testified that Emma had cuts on her right side and that, by the time the officer left, Emma's right eye was swollen completely shut. Officer Flores did not obtain any evidence from the scene other than the photos.

William testified that he and Emma had separated a few weeks prior to the incident; he kicked her out of the house after learning that she had been unfaithful to him. He testified that on the day of the incident, Emma brought the children to the house to visit him. He testified that when he confronted Emma about the missing truck payment, she did not indicate to him that she had used the money for medical purposes. Rather, she laughed and said that she had "wasted the money on other things." William testified that Emma asked if she could move back in with him. When he told her that he "didn't want her back," Emma became angry and hit the stereo, knocking it to the ground. William left the house because Emma was angry and frustrated; he walked over to Moss's

3

house. About thirty minutes or an hour later, Emma came out of the house yelling for help and saying that she needed a phone to call police. William got in his truck and drove off to talk to his pastor. After viewing the photographs of Emma's injuries, admitted at trial as State's Exhibits 4–10, William testified that he did not cause the injuries to Emma's face and that he did not hit her at all that day. He also testified that he did not use any scissors to injure her that day.

Moss testified that he was sitting in front of his house with William when Emma came out of her house and hollered, "Somebody call the police, . . . he just beat me up." Moss said that Emma did not specify who "he" was. He said Emma did not ask to borrow his phone. Moss did not notice any injuries or torn clothing on Emma.

### III. SUFFICIENCY OF THE EVIDENCE

In his sole issue, William contends that the evidence is insufficient to support his conviction.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

4

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

## B. Assault of a Family Member

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. Tex. Penal Code Ann. § 22.01(a)(1). The offense is enhanced to a third-degree felony when "it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a [family member]." *Id.* at § 22.01(b)(2)(A).

5

## C. Evidence Is Sufficient

Here, William argues that the evidence is insufficient to support his conviction specifically because: (1) Emma's eye injuries could have occurred after he left the house; (2) the scratches to Emma's body are inconsistent with the type of injuries that scissors would cause; (3) Moss testified that he did not observe injuries to or torn clothing on Emma immediately following the argument; and (4) Emma did not clearly identify William in court as the perpetrator.

The trial judge, as the factfinder, heard evidence that William got mad at Emma and that he hit her in the face with his hand multiple times. He heard evidence that Emma and William engaged in a struggle in which he tried to stab her with a pair of scissors. He saw State's Exhibits 4–10, which show Emma with a swollen eye, bruises on her face, a torn shirt, and scratch marks on her chest. He also saw State's Exhibits 1–3, showing William's prior convictions for assault against Emma.

Despite William's contention that it would be unusual for an eye to take forty-five minutes to swell shut and despite his contention that an injury from scissors would be a gash wound, not a scratch, it was up to the trial judge, as the factfinder, to resolve conflicts in the testimony, to weigh the evidence, and to determine whether Emma's testimony was credible. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise*, 364 S.W.3d at 903; *Blackman*, 350 S.W.3d at 595. The trial judge determined that Emma's testimony was credible. Finally, contrary

6

to William's assertion on appeal, Emma did clearly identify William in court; she testified that he was her husband and the person who assaulted her.[2]

Viewing the evidence in the light most favorable to the trial court's verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that William committed the offense of assault of a family member with a previous conviction. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A); *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903. Accordingly, we hold that the evidence is sufficient to support William's conviction. We overrule William's sole issue.

## IV. CONCLUSION

Having overruled William's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 15, 2013

---

[2]Counsel for the State asked Emma if she saw her "husband, the Defendant, William Peraza Pacheco" in the courtroom. She said that she did, and the record reflects she pointed him out when asked by the prosecutor to "point in [William's] general direction."