# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH
### NO. 02-12-00119-CR


JOSEPH MITCHELL BERMAN                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury acquitted Appellant Joseph Mitchell Berman of aggravated sexual assault of a child but convicted him of sexual performance by a child, aggravated kidnapping, and indecency with a child by exposure. The jury assessed his punishment at twenty years' confinement for the conviction of indecency with a

---

[1]*See* Tex. R. App. P. 47.4.

child and at life imprisonment for the convictions of aggravated kidnapping and sexual performance by a child. The trial court sentenced Appellant accordingly.

Appellant brings seven points on appeal, arguing that the trial court improperly allowed two witnesses to testify as outcry witnesses, that the trial court improperly admitted hearsay evidence, and that the evidence was insufficient to support the convictions for aggravated sexual assault of a child, sexual performance of a child, aggravated kidnapping, and indecency with a child by exposure. Because the evidence is sufficient to support the jury's guilty verdicts and because the trial court did not abuse its discretion by admitting the evidence complained of, we affirm the trial court's judgment.

**Summary of the Facts**

The six-year-old female complainant was playing in the front yard with other children. Appellant lived next door and had a truck the children often used as a "base" when they played tag. At some point during the afternoon, Appellant picked up the complainant and carried her to a neighbor's house around the corner. Appellant had a key to the house because the family was out of town and had asked him to keep an eye on the house and to feed their dogs.

Appellant gave the complainant treats they found in the house. Appellant took off his clothes and urinated while the complainant watched. He removed her clothes, and they played "mommy and daddy." Appellant kissed her all over and licked her "back privacy." They worked puzzles and rode on a rocking horse.

2

The complainant said that Appellant had to get on her back to ride the horse and that she did not like it, so she got off.

The complainant's grandmother (Grandmother) went looking for the complainant. Grandmother questioned the neighbors and went to the house where Appellant had taken the complainant. The complainant heard Grandmother knocking on the door and calling for her. But Appellant refused to answer the door, and Appellant told the complainant that Grandmother was mad at him. Soon, Appellant told the complainant that it was time to go. He picked her up, carried her through the backyard of the house to which he had taken her, and dropped her over the fence into a culvert.

By this time, the police had arrived to search for her, and a police officer, Sergeant Jose Murillo, was searching in the culvert. The complainant saw his flashlight and ran toward him. He noticed that she had on socks, but no shoes. When the police officer returned the complainant to her family, Grandmother noticed that the complainant was dressed but that her underwear was on inside out and backwards.

After the police left that night, the complainant was taken to Cook Children's Hospital for a sexual assault examination, and on the day after the incident she was interviewed by a forensic interviewer. Inside the neighbor's house where Appellant had taken the complainant, the police found the empty treat containers and the complainant's shoes. When the homeowner arrived, he noticed a rocking horse on the son's bed and lint in the dryer trap where

3

Appellant had dried his and the complainant's clothes. He also discovered that the DVR for the home's security system was missing.

Appellant was arrested when he attempted to pick up his paycheck early. Police found an open briefcase in his house. The briefcase contained passports and important documents. When police attempted to obtain buccal swabs from Appellant, pursuant to a warrant, he fought the officers to prevent their taking the swabs. DNA analysis revealed that Appellant's DNA was on the complainant's buttocks and abdomen.

A hair was discovered on a swab from the complainant's inner labia. When the police attempted to collect pubic hair and head hair from Appellant, pursuant to a warrant, they discovered that Appellant had shaved his pubic hair as well as the hair on his buttocks. The hair found on the complainant was later found to be an animal hair.

**Aggravated Sexual Assault**

In his fourth point, Appellant challenges the sufficiency of the evidence to support his conviction for aggravated sexual assault of a child. The jury acquitted Appellant of that charge. We, therefore, dismiss Appellant's fourth point as moot.[2]

---

[2]*See* Tex. R. App. P. 47.1; *Martinez v. State*, No. 02-08-00112-CR, 2008 WL 5194307, at *1 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op., not designated for publication).

4

**Sufficiency of the Evidence**

In his fifth, sixth, and seventh points, Appellant argues that the evidence was insufficient to sustain his convictions for sexual performance of a child, aggravated kidnapping, and indecency with a child by exposure.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] We consider all the evidence in the case, even improperly admitted evidence.[4]

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[5] The trier of fact is the sole judge of the weight and credibility of the evidence.[6] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the

---

[3]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

[4]*Winfrey*, 393 S.W.3d at 767.

[5]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

[6]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768.

evidence and substitute our judgment for that of the factfinder.[7] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[8] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[9]

Appellant argues merely that the complainant's testimony was ambiguous and lacked credibility. He also argues inferentially that we should not consider what he describes as the wrongfully admitted testimony of Grandmother, the forensic interviewer Carrie Pascall, and the sexual assault nurse examiner Areseli Demarias. Appellant does not direct us to any other insufficiency in the evidence.

A person commits the offense of sexual performance by a child when he intentionally or knowingly induces a child to engage in sexual conduct or a sexual performance.[10] Appellant carried the complainant to an empty house, took off his clothes and hers, and played "mommy and daddy" with her. He kissed her "all

---

[7]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[8]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[9]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

[10]Tex. Penal Code Ann. § 43.25(b) (West 2011).

over" and licked her "back privacy," and his DNA was found on her abdomen and buttocks.

A person commits the offense of aggravated kidnapping in the context of the case before us when he intentionally or knowingly abducts another person with the intent to violate or abuse her sexually.[11] Appellant picked up the complainant and carried her to an empty house. Inside the house, he took their clothes off and engaged in lewd activity, playing "mommy and daddy," kissing her all over, and licking her "back privacy." When Grandmother knocked on the door and called for the complainant, Appellant refused to answer or open the door, although the complainant had asked him to go to the door. Appellant also refused to go to the door when the police knocked. He did return the child, but he did so by dropping her over the fence into a drainage ditch.

A person commits the offense of indecency with a child by exposure if he exposes his genitals to a child younger than seventeen years of age, knowing the child is present, with intent to arouse or gratify his sexual desire.[12] Appellant took all his clothes off, took the complainant's clothes off, and played "mommy and daddy" in the empty house. Appellant kissed the complainant "all over" and licked her "back privacy." The complainant described Appellant's penis as "straight" and "big" and "fat."

---

[11] *Id.* § 20.04(a)(4).

[12] *Id.* § 21.11(a)(2)(A).

Considering all the evidence, we hold that the evidence is sufficient to support Appellant's convictions, and we overrule his fifth, sixth, and seventh points.

**Outcry Witnesses**

In his first and second points, Appellant argues that the trial court abused its discretion by allowing outcry testimony from Grandmother and from Pascall, the forensic interviewer. Our law provides that

> hearsay is inadmissible unless it falls into one of the exceptions in Rules of Evidence 803 or 804, or it is allowed "by other rules prescribed pursuant to statutory authority." One of these "other rules" is Article 38.072 of the Code of Criminal Procedure. When a defendant is charged with certain offenses against a child under the age of 14 or a disabled individual, Article 38.072 allows into evidence the complainant's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult the complainant told of the offense. Though the terms do not appear in the statute, the victim's out-of-court statement is commonly known as an "outcry," and an adult who testifies about the outcry is commonly known as an "outcry witness."[13]

As the Texas Court of Criminal Appeals noted with approval, Texas courts of appeals have pointed out that

> [t]he outcry witness is the first person over the age of 18, other than the defendant, to whom the child spoke about the offense. The statement must be "more than words which give a general allusion that something in the area of child abuse is going on"; it must be made in some discernable manner and is event-specific rather than person-specific. Hearsay testimony from more than one outcry

---

[13]*Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011) (citations omitted).

witness may be admissible under article 38.072 only if the witnesses testify about different events. There may be only one outcry witness per event. In order to invoke the statutory exception, the party intending to offer the statement must notify the adverse party of the names of the outcry witnesses and a summary of their testimonies, the trial court must conduct a reliability hearing of the witnesses outside the presence of the jury, and the child victim must testify or be available to testify at the proceeding.[14]

The State is not obligated to choose as the outcry witness the person who heard a brief allusion to an offense over the person who heard a description of the events constituting the offense sufficient to distinguish a specific offense from any other commission of that offense. That is, the State is not required to choose as the outcry witness the person who heard a general allusion to wrongdoing as opposed to the person who was told specific details of the offense sufficient to distinguish that offense from other acts of misconduct against that complainant by the defendant or by another person.[15]

Appellant argues that Sergeant Murillo was the proper outcry witness. Grandmother and Sergeant Murillo both testified that they were together when Grandmother asked the complainant to tell her what had happened. Grandmother testified that she had asked the complainant questions but got no real answers until she questioned her at home, where the complainant reported that Appellant had taken her to the neighbor's house, taken her clothes off, and

---

[14]*Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (citations omitted).

[15]*Id.*

9

"kissed her all over." Sergeant Murillo testified that he had been present when the complainant said that Appellant had "kissed her all over."

We therefore hold that the record sufficiently reflects that Grandmother was the proper outcry witness for the offense of sexual performance by a child.[16] The trial court therefore did not abuse its discretion by admitting her testimony.

Appellant also argues that Pascall was not the proper outcry witness to testify that he had exposed his penis to the complainant. He argues that instead, Demarias was the proper outcry witness for the indecency offense because the complainant had told her that Appellant had taken off his clothes. Although Demarias testified that the complainant had told her that Appellant took off his clothes, there was no mention of seeing his penis. Pascall testified that the complainant had discussed specifically seeing Appellant's penis. Pascall also testified that the complainant described Appellant's penis and drew a picture of Appellant and his penis. Consequently, the trial court did not abuse its discretion by admitting Pascall's testimony.

Because Grandmother and Pascall were proper outcry witnesses, we overrule Appellant's first and second points.

**Hearsay**

In his third point, Appellant argues that the trial court abused its discretion by overruling his objection to the hearsay evidence from the sexual assault nurse

---

[16]Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2013).

10

examiner Demarias.  A trial court's decision to admit hearsay evidence under an exception to the hearsay rule is reviewed for an abuse of discretion.[17]  A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement.[18]  The trial court's decision will be upheld if that decision is correct under any theory of law applicable to the case.[19]

The State offered the evidence under rule 803(4) of the rules of evidence, statements made for purposes of medical diagnosis or treatment.[20]  Demarias testified that she was a member of a team that performs sexual and physical abuse exams in children.  Although she testified that the purpose of her examination was "for medical examination and diagnosis," she admitted that she had asked the complainant about any type of pornography involved and whether anybody other than Appellant had been abusing her.  Demarias also admitted that her purposes were to obtain evidence, including DNA evidence, and to ensure that CPS was notified if other children were in the home.  She did not testify to providing any actual treatment whatsoever, although she testified that she did "follow[ ]up with further treatment."  The "further treatment" consisted of

---

[17] *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

[18] *Id.*

[19] *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

[20] *See* Tex. R. Evid. 803(4).

11

swabbing the complainant for DNA evidence. Demarias testified that it was important to know who the assailant was to be able to report it to CPS.

Demarias also testified, however, that she completed an assessment of the complainant's eyes, ears, nose, and throat and that the complainant denied losing consciousness when Appellant deposited her on the other side of the fence from the neighbor's yard.

Demarias's "medical examination and diagnosis" and "further treatment" were thinly disguised methods of gathering evidence for purposes of prosecution. She admitted that the complainant denied contact with or penetration of the genitals, but Demarias did examine the genitals. Given the record before this court, and the general objection to all of Demarias's testimony, we cannot say that there was no medical purpose to obtaining any of the history. Further, because the investigative questions were intertwined with proper requests for medical history, we cannot say that the trial court abused its discretion by allowing her testimony. We overrule Appellant's third point.

**Conclusion**

Having overruled Appellant's seven points, we affirm the trial court's judgment.

12

                                        /s/ Lee Ann Dauphinot
                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 22, 2014