

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00290-CR

JAY THAYER WILLIAMS            APPELLANT

V.

THE STATE OF TEXAS              STATE

----------

### FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Jay Thayer Williams of capital murder, and the trial court sentenced him to life imprisonment. Appellant brings three points on appeal, challenging the sufficiency of the evidence and contending that the trial court abused its discretion by admitting testimony and exhibits regarding his known fingerprints seized in 1983 and by allowing testimony comparing the

---

[1]*See* Tex. R. App. P. 47.4.

known fingerprints to latent fingerprints collected at the crime scene. Because the trial court committed no reversible error and because the evidence is sufficient to support the jury's verdict, we affirm the trial court's judgment.

**Statement of Facts**

Charles and Sandra Martin lived in Fort Worth with their two children. In September 1986, they put their house up for sale, advertising it by way of a "For Sale" sign placed in their front yard. On September 22, 1986, Charles called home to speak to his wife. His five-year-old son answered the phone and told his father that Sandra was in the "other room and the door [was] locked." A few minutes later, Charles called home again. His son again answered the phone and stated that Sandra was in the "other room and the door [was] locked," and, when questioned by his father whether anyone had been to the house, added that a man had come to look at the house.

Charles left work and went home, where he found the bedroom door closed and locked. Charles knocked on the door and then broke the door open. Inside, he found Sandra dead on the floor beside the bed with duct tape around her head. Her hands were bound together with duct tape; her ankles were also bound with duct tape but were not bound together. Her skirt was pulled up, and her underwear was pulled down around her right ankle. Charles pulled some of the duct tape away from Sandra's nose and called the police.

The police found a pillow with a bullet hole in it next to Sandra's body. The autopsy found that Sandra had died from acute cerebral laceration and

2

intracranial hemorrhage caused by a gunshot wound to the head. Bruising on her thyroid and hemorrhaging within the strap muscles of her neck indicated that before being shot, Sandra had been strangled.

Crime scene officer Jim Varnon of the Fort Worth Police Department (FWPD) removed the duct tape from Sandra's body and was eventually able to separate the layers of tape to recover prints from parts of the tape that had been covered by other layers. Over the years, the fingerprints were submitted to the Texas Department of Public Safety's (TDPS's) Automatic Fingerprint Identification System (AFIS) six separate times but yielded no positive results.

In 2009, Detective Jose Hernandez of the FWPD's cold case unit began reviewing the Martin case. He again submitted the fingerprints to AFIS, as well as to the FBI's fingerprint database. No matches were found.

Hernandez then decided to physically take the prints to TDPS's latent print section in Austin. About three weeks later, that lab gave him Appellant's name and other information that prompted him to make contact with the Temple Police Department. The record does not indicate exactly what information Hernandez received or exactly from whom he received it because the trial court sustained Appellant's hearsay objection when Hernandez seemed about to testify on that subject.

Hernandez traveled to Temple, where he met with that police department's records custodian Skip Carmouche. From Carmouche, Hernandez obtained a fingerprint card containing Appellant's fingerprints, collected in connection with

3

his 1983 arrest in Temple for driving with a suspended license. Hernandez then drove back to Fort Worth and submitted the Temple fingerprint card to the FWPD crime lab's latent print examiner. Results from the crime lab led Hernandez to obtain a warrant for Appellant's arrest for Sandra's murder.

Before trial, the State moved to retake Appellant's fingerprints because the police officer who had originally taken his prints upon his arrest for Sandra's murder was no longer employed by FWPD. To avoid having to call the former employee as a witness at trial to testify about the fingerprints, the State wanted to retake Appellant's prints so that a current FWPD employee could testify about them. Appellant objected under the Fourth Amendment to the U.S. Constitution and article one, section nine of the Texas Constitution. The trial court allowed the fingerprinting but granted Appellant a running objection at trial to the use of them.

At trial, Appellant objected when the State moved to admit the Temple fingerprint card. Appellant objected on relevance grounds and further argued that the fingerprints were taken when he was under arrest, in violation of the Fourth Amendment to the U.S. Constitution and article one, section nine of the Texas Constitution, and that the State was attempting to introduce evidence in violation of article 38.23 of the code of criminal procedure.

The trial court initially sustained Appellant's Fourth Amendment objection after a hearing, but after a later hearing, the trial court overruled Appellant's objections. The trial court granted Appellant a running objection to the evidence.

4

When the State later offered the Temple fingerprint card during Hernandez's testimony, Appellant objected that the fingerprint card was hearsay and that it violated his Sixth Amendment right to confrontation because he did not have the opportunity to confront and cross-examine the person who obtained the prints. He also reasserted his Fourth Amendment and article one, section nine objections. The trial court conditionally admitted the fingerprint card but on the next day admitted the fingerprint card for all purposes, stating that Appellant's prior objections were reconsidered, still overruled, and running.

James Freed, a fingerprint analyst with the FWPD, testified that six fingerprints taken from the duct tape matched those on the fingerprint card from Temple. He then testified about State's Exhibits 68–73, each of which, he testified, had an enlarged photo of one of the prints from the fingerprint card and of one of the prints from the duct tape.

Appellant recalled Freed in his defense. During his testimony, Freed stated that his earlier testimony regarding State's Exhibit 73 was incorrect, in that the left thumbprint he had matched to the duct tape was actually not from the Temple fingerprint card. In a hearing outside the presence of the jury, the State produced DPS records of a 1981 Dallas arrest of Appellant. Freed stated that he had used a print taken at the time of this Dallas arrest for State's Exhibit 73, not the Temple fingerprint card.

Appellant moved to strike, stating, "I move that that would be removed from evidence, Your Honor, be stricken from the record and the jury admonished

5

not to consider that which was offered and introduced from—by Mr. Freed as a Temple print when, in fact, it's not." The State offered to strike the exhibit and to strike the testimony regarding "the print appearing under the title 'Left Thumb [Appellant].'" The following exchange then occurred:

THE COURT: All right. Then the hearing is over. Defense motion granted.

[Defense Counsel]: [The prosecutor] moved to—he moved to strike the testimony about it. I don't want to strike the testimony. I just want you to instruct the jury not to consider it. Take it out and tell them not to consider it.

THE COURT: Take out that exhibit and any testimony concerning that exhibit. Am I understanding correctly?

[Defense Counsel]: No, just the exhibit. I would like to be able to harp on the fact that he continually professed perfection and that—

THE COURT: I got you. I see what you're saying. And I was thinking specifically of testimony as to a specific comparison. But if you're moving to strike the—

[Defense Counsel]: Let me withdraw my motion to strike it.

THE COURT: Okay.

On questioning by the State in front of the jury, Freed acknowledged that the left comparison thumbprint was not taken from the Temple fingerprint card but stated that it was Appellant's left thumbprint, just taken from a different sample. Appellant did not timely object to this testimony.

The jury found Appellant guilty and assessed punishment of life imprisonment. The trial court sentenced him accordingly.

6

**Sufficiency of the Evidence**

In his third point, Appellant challenges the sufficiency of the evidence to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903.

[5]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

7

when viewed in the light most favorable to the verdict.[6]  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[8]

Appellant argues that the evidence is insufficient to support the jury's verdict that he is guilty of intentionally causing Sandra's death by shooting her with a deadly weapon, to wit: a firearm, in the course of committing or attempting to commit aggravated sexual assault of her.  Specifically, Appellant challenges the evidence that he was in the course of committing or attempting to commit aggravated sexual assault.  He argues that the only evidence that he was in the course of committing or attempting to commit the offense of aggravated sexual assault of Sandra was the fact that she was discovered with her panties around her ankle.  There was no evidence of trauma to her genital area, nor evidence of third-party DNA.  Appellant points out that the crime scene officer, Varnon, testified that he saw no indication of a completed sexual assault.  Hernandez

---

[6] *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011).

[7] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

[8] *Isassi*, 330 S.W.3d at 638; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

testified that there was no forensic evidence to support the theory that Sandra had been sexually assaulted at the time of her death. Nor was there evidence of a struggle, either from an examination of the undisturbed bed or from the Martins' five-year-old son's testimony that he heard no noise coming from the bedroom. Appellant argues that, although the evidence may provide a strong suspicion that the assailant possessed sexual intent, there is no evidence proving an attempted penetration of Sandra's female sexual organ, mouth, or anus.

The State points to the testimony of Dr. Marc Krause, the deputy medical examiner who performed the autopsy on Sandra's body. When asked about the lack of physical evidence of sexual assault at trial, he testified that, although he did not find evidence of genital trauma, in his opinion the evidence did not exclude the possibility of sexual assault. The State also points out that although Appellant argues that there is no evidence of attempted penetration or evidence that his acts amounted to more than mere preparation that tended, but failed, to effect commission of the intended offense, "Appellant's argument ignores methods other than penile penetration by which sexual assault may occur . . . ."

Neither the law nor any allegation in the indictment requires proof of a completed sexual assault. The State was required to prove only that Appellant intentionally caused Sandra's death in the course of committing or in the course of attempting to commit the offense of sexual assault. That is, the State was required only to prove that Appellant intentionally caused Sandra's death in the course of doing an action that amounted to more than mere preparation that

9

tended but failed to effect the commission of the sexual assault.[9]  Sexual assault may occur by any genital or anal penetration or by causing the genitals of the assailant to penetrate the mouth of the complainant or by causing the genitals of the complainant to penetrate the mouth of the assailant.[10]

Appellant was in a locked room with Sandra for an extended period of time.  She was found lying on the floor of her bedroom, next to her bed.  Her skirt was pulled up to her hips; her panties were pulled down around her right ankle.  Duct tape bound her wrists and each ankle, but the ankles were not bound together.  Her head was wrapped in duct tape that covered her eyes, nose, and mouth.  A piece of duct tape was also found attached to one of the bedposts.  Although Sandra's purse and credit card had been taken, her Rolex watch, gold necklace, gold bracelet, and gold earrings were still on her body.  Various police officers testified that the crime scene they viewed suggested sexual assault to them.  Further, the fact that expensive jewelry was left on the body appeared to rule out robbery as a motive.  Additionally, a motive need not be exclusive.[11]  The

---

[9]*See Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. 1981).

[10]Tex. Penal Code Ann. § 22.011(a)(1)(A–C) (West 2011).

[11]*See Nelson v. State*, 848 S.W.2d 126, 132 (Tex. Crim. App. 1992) (holding that even if jury believed that defendant killed the complainant because the complainant looked at him with desire, the jury could also believe that defendant killed the complainant in the course of committing robbery), *cert. denied*, 510 U.S. 830 (1993).

fact that something may have been stolen does not rule out murder in the course of attempting or committing a sexual assault.

As the Texas Court of Criminal Appeals explained in *Swearingen v. State*,

> Based on the circumstantial evidence in the multitude of possible scenarios suggested by the physical evidence, a rational jury could have entertained reasonable doubt regarding [Appellant's] guilt. The question, however, is whether a rational jury would have *necessarily* entertained a reasonable doubt regarding the aggravating elements of the offense.[12]

Following the *Swearingen* court,[13] we hold that the evidence is not so obviously weak that a rational jury would necessarily have entertained a reasonable doubt that Appellant intended to sexually assault the complainant and that he attempted to do so. We overrule Appellant's third point.

**Admissibility of Fingerprint Exhibits and Testimony**

In his first and second points, Appellant argues that the trial court abused its discretion by admitting testimony and exhibits regarding his known fingerprints on the Temple fingerprint card and by admitting testimony comparing his known fingerprints to latent fingerprints collected at the scene of Sandra's murder.

The State argues that Appellant failed to preserve his first and second points by withdrawing his motion to strike State's Exhibit 73 and the erroneous testimony regarding the origin of Appellant's known left thumbprint on that

---

[12]101 S.W.3d 89, 96 (Tex. Crim. App. 2003).

[13]*See id.*

11

exhibit. While Appellant did withdraw his motion to strike the exhibit, his discussions with the trial court in the voir dire hearing indicate that he never moved to strike the testimony; defense counsel wanted the jury to hear it and he wanted to "harp on the fact that [Freed] continually professed perfection." It was the prosecutor who had moved to strike the testimony.

Nevertheless, after the voir dire hearing, the prosecutor established on cross-examination before the jury that Freed had matched Appellant's known left thumbprint from a different sample than the Temple fingerprint card to a latent left thumbprint found at the murder scene. Appellant did not timely object to this testimony. The erroneous admission of evidence will not require reversal when other such evidence is admitted without objection.[14] Accordingly, we agree with the State in part. That is, we agree that Appellant failed to preserve a complaint regarding evidence of his left thumbprint.

Regarding Appellant's remaining challenges to the fingerprint evidence, we believe that he sufficiently communicated his confrontation objection to the trial court regarding both the physical fingerprint evidence and Freed's testimony about it and that he received an unfavorable ruling. We will therefore address Appellant's remaining challenges on their merits.

---

[14]*Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

12

Appellant argues that testimony regarding the known prints by a person who did not take the prints is a denial of his Sixth Amendment right to confrontation.[15] We disagree. The right of confrontation applies only to testimonial statements.[16] A statement is testimonial when made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[17] The taking of fingerprints is not the same as scientific testing. It is more similar to taking a photograph, handwriting, drawing a picture, or recording a voice exemplar. That is, a fingerprint card is not testimonial unless it contains testimonial notations.[18]

The Texas Court of Criminal Appeals has stated that certain things, such as a person's voice, appearance, and fingerprints, are not testimonial. Neither is there any expectation of privacy in voice or features or handwriting that a person routinely presents to the public. Specifically, the Texas Court of Criminal Appeals has explained,

> In *Olson v. State*, this Court held that compelling a handwriting sample from a defendant does not constitute compelling an accused to "give evidence against himself" in violation of the Texas Constitutional provision

---

[15]*See* U.S. Const. amend. VI.

[16]*Crawford v. Washington*, 541 U.S. 36, 51–52, 124 S. Ct. 1354, 1364 (2004).

[17]*Id.*

[18]*See United States v. Wade*, 388 U.S. 218, 223, 87 S. Ct. 1926, 1930 (1967); *Schmerber v. California,* 384 U.S. 757, 764, 86 S. Ct. 1826, 1832 (1966).

13

on self-incrimination. The Court further held that compelling a blood test, if taken under conditions which comport with due process, likewise does not violate the state privilege against self-incrimination. This Court reasoned that such tests are non-testimonial in nature and thus the self-incrimination privilege is not implicated under such circumstances. The Court in *Olson* further noted that many types of physical evidence are compellable from an accused consistent with both the Fifth Amendment of the United States Constitution and Art. I, Sec. 10, of the Texas Constitution. A partial list of these types of physical evidence include *fingerprints*, examination of the tongue, fingernail scrapings, footprints, requiring the accused to stand in a lineup, requiring the accused to raise his hand before the jury, a paraffin test, [and] requiring the accused to put on clothes and speak before the jury.[19]

Fingerprints are not testimonial when they are given by a defendant,[20] nor are they testimonial when they exist on a card and are presented before a jury. If the fingerprint card is shown to be sufficiently reliable and adequately connected to the person in question, the fingerprint card, absent testimonial notations, is still nontestimonial. We therefore hold that the trial court did not abuse its discretion by admitting testimony and exhibits regarding the known fingerprints provided by Appellant in 1983, nor did the trial court abuse its discretion by admitting testimony comparing Appellant's known fingerprints to the latent fingerprints collected at the crime scene. We overrule Appellant's first and second points.

---

[19] *Bell v. State*, 582 S.W.2d 800, 806–07 (Tex. Crim. App. 1979) (emphasis added; citations omitted), *cert. denied*, 453 U.S. 913 (1981).

[20] *See Miffleton v. State*, 777 S.W.2d 76, 79–80 (Tex. Crim. App. 1989).

14

**Conclusion**

Having overruled Appellant's three points, we affirm the trial court's judgment.


LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 5, 2013