**AFFIRM; and Opinion Filed January 23, 2014.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-01074-CR**

**DAVID ANTHONY MCGEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F12-00275-Y**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Lang-Miers

The State charged David Anthony McGee with stalking. A jury found him guilty and sentenced him to 20 years in prison. In four issues, appellant complains that the evidence is insufficient to support the verdict, and the trial court abused its discretion by admitting certain evidence, limiting his closing argument, and allowing the State to amend the indictment during trial. We issue this memorandum opinion because the issues are settled. TEX. R. APP. P. 47.4. We affirm the trial court's judgment.

### BACKGROUND

The complainant testified that she met appellant in March 2009 and they had an intimate dating relationship until about July 2009. She described their relationship as "[r]ocky, up and down, kind of controlling, back and forth." The complainant, who was in a sorority and had friends in an associated fraternity, at times received calls from these fraternity brothers. She said

it was common for the sorority to have a friendship between the brothers and sisters.  Appellant had a "problem" with the complainant's fraternity brothers calling her and questioned her about why they called, what she was doing with them, and why she had to continue to be their friends. Several times appellant accused her of cheating on him.  At some point during their relationship, appellant went through the complainant's cell phone and got the numbers of several of the fraternity brothers and called them questioning them about their relationship with the complainant.

Around July or August 2009, the complainant told appellant she did not want to be in a dating relationship with him anymore but said they could remain friends.  Appellant began to call and send text messages to the complainant excessively during this time.  He also sent emails to her at work.  One day while the complainant was at the sorority house, she heard her car alarm sound.  She looked out and saw appellant standing by her car.  She reset the alarm and it went off again.  She looked out and saw appellant driving off so she went outside and looked at her car; she saw a dent in it.  She also saw a shoe print in the dust on the car in the area of the dent.  She took pictures of the shoe print and, the next day, asked appellant over.  She managed to take a picture of the bottom of his shoe that he had been wearing the day before.  She compared the pictures and concluded that appellant had damaged her car.  When she confronted him about it, he denied it.  She asked him to leave but he refused.  They argued and appellant pushed her.  She tried to call 9-1-1 on her cordless telephone and appellant grabbed the phone and threw it against the wall.  He yanked the base of the telephone out of the wall and also threw her cell phone against the wall.  Then the complainant went into the garage and started closing the garage door. Appellant drove his car under the garage door as it was closing, damaging the garage door, and then left.  The complainant testified that the 9-1-1 call apparently had gone through because the

9-1-1 operator called her back; appellant was already gone. The operator dispatched police to the complainant's home. The State introduced the call into evidence.

The police arrested appellant on August 10 for assault and interfering with a 9-1-1 call. The calls from appellant's cell phone stopped while he was in jail. The complainant thought about not pressing charges against appellant and hoped that they could each go their own way. But when appellant was released from jail on August 18, he showed up at her house despite an emergency protective order prohibiting him from doing so, and the excessive calls began again. He also sent humiliating texts about her and pictures of her to her fraternity brothers. The complainant changed her mind about not pressing charges. She also decided that she and appellant could not be friends and told him to stop all contact with her. But appellant did not stop, and the evidence showed that he called or sent text messages excessively to her work, home, and cell phone.

One day while the complainant was away from home, someone kicked open the front door of her house. She called the police and told them about the trouble she had been having with appellant. Also during this time, two windows in the complainant's home were broken and her garage door was damaged again. The complainant testified that she was afraid to stay home by herself and either her mother or father stayed with her or she stayed at their house.

The complainant told appellant she was afraid of him, and he sent a text message stating, "Wht u got 2 b n fear of Right On!" She testified about statements appellant made that she construed as threats against herself or members of her family. One of those text messages stated, "If u value 1 delta place u will not want 2 threatn my masonic ties, kp n mind u hav famlw wit nice homez dont b foolish az u issue threatz 2 me Right On!" Another stated, "U'd be surprise the info I gathrd n time n ur hous & world. u dont want ak 2 (accidntly) catch a drug pos & pistol case do u? Right On!" The complainant said "1 delta place" referred to her sorority house and

–3–

"ak" referred to her brother. Appellant also told the complainant "he couldn't say he wouldn't hurt [her] or somebody else if [they] couldn't be together . . . ."

The evidence showed that the Duncanville police went to the complainant's home on numerous occasions for complaints of criminal mischief, burglary, assault, and others. The police told the complainant they had no way of proving appellant was the perpetrator, and that is when the complainant began recording his calls and saving his text messages. Officer Jones responded to some of the calls and, on one of those occasions, appellant called the complainant while Jones was there. Jones took the phone and identified himself as a Duncanville police officer. He said "[t]here was a short pause and then disconnect." Jones said the complainant seemed "very concerned" and even asked him how she could get a protective order. He said she did not feel safe staying at her own house.

The evidence also showed that appellant followed the complainant. He drove by her mother's house when the complainant was there, he drove to the sorority house when the complainant was there, he followed her to church, he went to a party without an invitation because the complainant was there, and he followed her to a restaurant and other places. He sent her text messages that indicated he was following her and watching what she was doing. On two occasions, he drove in front of the complainant and braked hard causing her to nearly hit appellant's car.

In September 2009, the complainant got a protective order against appellant. Then she began receiving text messages, calls, and emails from numbers she did not recognize. These calls continued into 2010. She answered some of the calls and recognized appellant's voice. She told him she had a protective order and to leave her alone. She recorded three of the calls, which were presented to the jury.

As late as May 2011, appellant showed up at a building where the complainant sometimes worked. On this particular day, she was not there. A witness told the jury that a man came into the lobby with a backpack, left the backpack in the waiting area, and then left the waiting area. Several people were concerned about the backpack so she called the on-duty police officer and he took the bag. When the man returned to the waiting area and saw his backpack was gone, he became upset and began cursing and yelling. The officer was notified and brought the backpack to the lobby. As the officer approached the man, the man continued to curse and yell and came toward the officer in an aggressive manner. Eventually the man obeyed the officer's commands to stop and showed the officer his identification. It was appellant. The officer determined that appellant was in violation of an active protective order by being at the building and detained him. The officer later told the complainant that appellant showed up at the building; he said he could tell from the tone of her voice that she was scared.

In his defense, appellant presented evidence of his good character through witnesses who had known him for many years. On cross-examination, however, those witnesses testified that they were unaware appellant had been arrested for assault and interfering with a 9-1-1 call, or that he had a protective order against him. Appellant's parents also testified that they thought the relationship between appellant and the complainant was fine, and they did not see anything to make them think otherwise.

In closing arguments, appellant argued that the case was one of "mixed messages" and the facts may have constituted harassment, but not stalking. He argued that the evidence showed the complainant was angry, but did not support a finding that she felt threatened or was afraid. The State responded by arguing that the case was not one of "mixed messages," but that appellant "can't take no for an answer."

The jury returned a verdict of guilty. During the punishment phase, the State offered evidence that appellant had been convicted of indecency with a child and had previously stalked a woman with whom he had been engaged. The jury found the enhancement paragraph true and assessed the maximum amount of time for the offense.

## SUFFICIENCY OF THE EVIDENCE

In issue one, appellant argues that the evidence is insufficient to support the conviction.

### *Standard of Review*

In conducting a sufficiency of the evidence review, we examine the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The standard is the same whether we are reviewing direct or circumstantial evidence. *Id.*; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We consider all of the evidence, whether or not it was properly admitted. *See Lockhart v. Nelson*, 488 U.S. 33, 41–42 (1988); *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). The factfinder is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See Isassi*, 330 S.W.3d at 638.

The indictment contained six specific allegations of stalking. The jury returned a general guilty verdict. We will not reverse the verdict if the evidence supports any of the theories charged. *See Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999); *Manuel v. State*, 357 S.W.3d 66, 82 (Tex. App.—Texarkana 2011, pet. ref'd).

### *Applicable Law*

As charged in this case, a person commits the offense of stalking

if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the other person, that:

(1)  the actor knows or reasonably believes the other person will regard as threatening:

>(A) bodily injury or death for the other person;

>(B) bodily injury or death for a member of the other person's family or household; or

>(C) that an offense will be committed against the other person's property;

(2)  causes the other person, or a member of the other person's family or household to be placed in fear of bodily injury or death or fear that an offense will be committed against the other person's property; and

(3)  would cause a reasonable person to fear:

>(A) bodily injury or death for himself or herself;

>(B) bodily injury or death for a member of the person's family or household; or

>(C) that an offense will be committed against the person's property.

Act of Jan. 27, 1997, 75th Leg., R.S., ch. 1, § 1, 1997 Tex. Gen. Laws 1, 1 (subsequent amendments omitted) (current version at TEX. PENAL CODE ANN. § 42.072(a) (West Supp. 2013)).

### *The Indictment and Jury Charge*

The indictment alleged that appellant engaged in the following conduct directed specifically at the complainant, that the conduct would cause a reasonable person to fear bodily injury, and that it caused the complainant to fear bodily injury for herself and her family:

(1)  called friends listed in the complainant's telephone address book "and threatened said persons, and made statements designed to humiliate and embarrass the said complainant";

(2)  "broke the complainant's cordless telephone and cellular telephone by throwing said telephones against a wall";

(3)  "told the complainant that [he] could not say that [he] would not hurt the complainant or another person in order to keep another person from 'having' the complainant";

(4)  "while operating a vehicle, . . . followed a vehicle occupied by the complainant on a public roadway";

(5)  "communicated directly with the complainant through emails, phone calls and text messages; and

(6)  "went within 500 feet of the complainant's place of employment at 301 E. Overton Rd, in violation of [a protective] order."

The jury charge tracked the language of the indictment.

### *Discussion*

Appellant contends that there is no credible evidence that he originated the telephone calls, text messages, or emails; no evidence he violated the protective order; no evidence he damaged the complainant's house or car; and no evidence of a continuous course of conduct.  He argues that because of this lack of authentication, "there was no feasible way that the jury could have concluded, beyond a reasonable doubt," that he committed the offense of stalking against the complainant.  When we review a sufficiency challenge, we consider all the evidence whether or not it was properly admitted.  *See Lockhart*, 488 U.S. at 41–42; *Sorrells*, 343 S.W.3d at 155.  Consequently, we do not need to decide for purposes of this issue whether the evidence was properly authenticated.

The complainant testified that 66 of the 72 text messages presented in evidence were from appellant, and she testified to numerous calls to her home, work, and cell phone.  Her telephone records were in evidence.  She said some of those communications were threatening, and she testified that she was afraid.

–8–

The complainant also testified that appellant drove his car under her garage door as she was closing it and damaged the garage door, broke her cordless telephone and cell phone by throwing them against a wall during an argument, and followed her on a public roadway.

Appellant argues that the State did not prove he violated the protective order because there was a discrepancy between the address on the protective order and the address of the building where he was detained for violating the order. Although there was a discrepancy in the address (301 E. Overton Road on the protective order versus the actual address of 303 E. Overton Road), the protective order prohibited appellant from going within 500 feet of "any subsequent place of employment or business address that may be taken during the pendency of this protective order." And the evidence showed that appellant knew the complainant frequently worked at the building located at 303 E. Overton Road.

The complainant also testified that her car was damaged the same day she saw appellant standing by it and heard the car alarm sound. The State presented evidence that the shoe print on the car matched the sole of appellant's shoe. The inference that appellant was the one who dented the complainant's car is reasonable in light of the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *See Sorrells*, 343 S.W.3d at 155.

Appellant also argues that the State did not prove he "engaged in a course of conduct which resulted in the fear that [the complainant's] property would be damaged." But the indictment alleged a course of conduct involving six different allegations of stalking, only one of which was fear of damage to the complainant's property. And appellant does not contend that the proof of the other allegations did not constitute a course of conduct.

In summary, the evidence showed that appellant engaged in more than one of the six specific allegations of stalking pursuant to the same scheme or course of conduct, the conduct

–9–

would cause a reasonable person to fear for her safety, and the complainant feared for her safety. We conclude that the evidence is sufficient to sustain the conviction, and we resolve issue one against appellant.

## ADMISSION OF EVIDENCE

In his second issue, appellant argues that the trial court abused its discretion by admitting certain evidence. We review a trial court's ruling on evidentiary matters for an abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). We will not reverse the ruling unless it lies "outside the zone of reasonable disagreement." *Id.*

### *Text Messages*

At various times during the complainant's testimony, the State offered and the trial court admitted 72 text messages sent to the complainant. On appeal, appellant complains generally about the admission of "text messages." He argues that the State did not authenticate the text messages because it "never proved the texts originated from Appellant."

Authentication is a condition precedent to admissibility. TEX. R. EVID. 901(a). A proponent of evidence satisfies its burden to establish the authenticity of the evidence if the proponent produces "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Rule 901(b) provides a list of non-exclusive methods for authenticating evidence, one of which is testimony from a witness with knowledge that the item in question is what it is claimed to be. *Id.* 901(b). Under Rule 901, the proponent does not need to establish beyond all doubt that the item is what the proponent claims it is. Instead, the trial judge must decide simply whether the proponent has offered sufficient information for the jury to reasonably conclude that the item is what the proponent claims it is. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). As one court noted, Rule 901 "does not erect a particularly

–10–

high hurdle, and that hurdle may be cleared by circumstantial evidence." *Manuel*, 357 S.W.3d at 74 (quoting Peter T. Hoffman, *Texas Rules of Evidence Handbook*, art. IX (8th ed. 2008–09)).

Appellant does not cite which of the 72 text messages his complaint specifically addresses, and the record shows that he objected to only 16 of the text messages on authentication grounds. Of those 16 text messages, 10 contained within the message the name "Anthony McGee" and a cell phone number. The complainant testified that "Anthony McGee" was appellant and that the phone number on the message was the same number appellant used to contact her.

Appellant argues, however, that the records introduced into evidence showed that the number did not belong to him. Indeed, the phone company records showed the cell phone was listed in another person's name, but the complainant testified that it was the same number appellant used to contact her and it was the number she programmed into her phone as appellant's contact number. Because of their relationship, the complainant was in a position to know appellant's cell phone number. *See Tienda*, 358 S.W.3d at 639; *Manuel*, 357 S.W.3d at 76–77. And the circumstances of this case are such that it was reasonable to believe that the number was appellant's number and the calls and text messages were from him. *See Tienda*, 358 S.W.3d at 640; *Manuel*, 357 S.W.3d at 76–77. We conclude that the State satisfied its burden to authenticate the calls and text messages.

With regard to the remaining six text messages, the record showed they were sent from "Y!:astigg76." The messages did not contain the sender's name or cell phone number. The complainant testified that she received these text messages the day after appellant was released from jail and, although she believed they were from appellant because they were "consistent with the other text messages [appellant] would send [her]," she did not know who they were from. In

overruling appellant's authentication objection to these six text messages, the trial court said, "Goes to the weight, not the admissibility."

Even if the trial court abused its discretion by admitting the six text messages from "Y!:astigg76," we conclude that the error did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Appellant does not argue how the admission of these six text messages affected his substantial rights, and the likelihood that those text messages affected the jury's verdict is at best slight in light of the 66 other text messages that had already been admitted into evidence, most without objection, and the other substantial evidence of appellant's guilt.

### *Emails*

Appellant also complains about two emails admitted into evidence. The emails were sent to the complainant and purported to be from Adam Stigger and Howard Young. The complainant testified that she received the emails, but did not know Stigger or Young, and that she believed the emails were from appellant. Appellant lodged an authentication objection and the trial court overruled appellant's objection stating, "Goes to the weight, not the admissibility."

On appeal, appellant argues that the trial court abused its discretion by admitting the emails because there was no indicia of reliability that the emails actually came from appellant. Even if the trial court abused its discretion by admitting the two emails, we conclude the error was harmless. *See* TEX. R. APP. P. 44.2(b). The emails were sent almost two months apart and did not contain harassing or threatening language. (They stated, "What's the plan 4 ur birthday?" and "you look wonderful today"). Considering the substantial other evidence of appellant's guilt, we conclude that any error in the admission of these emails was harmless.

### *Recording of 9-1-1 Call*

Appellant also argues that the trial court abused its discretion by admitting a recording of the 9-1-1 call made by the complainant. When the State offered the recording, appellant lodged a hearsay objection. On appeal he argues that "the objection was directed at the lack of foundation" and the trial court's ruling "revealed the court's true understanding that the objection concerned a lack of foundation." We disagree.

Appellant objected to the recording as hearsay. The trial court stated, "Foundation was established under Rule 803, parenthesis, 2, close parenthesis, and the objection is overruled." Even though the trial court used the word "foundation" in its ruling, Rule 803(2), which the court relied on as a basis for its ruling, is the excited utterance exception to the hearsay rule. *See* TEX. R. EVID. 803(2). Consequently, we conclude that appellant's hearsay objection did not preserve an objection based on a lack of foundation, and the record does not show that the trial court understood the hearsay objection to be based on a lack of foundation.

Alternatively, appellant argues that the State did not present any evidence satisfying the requirements of an excited utterance. He contends that the State did not present evidence that the complainant made the 9-1-1 call "without time to fabricate," that the "call was related to the event described in the call," or that the call "demonstrated a spontaneous reaction." Again, we disagree.

A statement may be admissible as an exception to hearsay if it relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2). The complainant tried to call 9-1-1 while appellant was in her home arguing with her and refusing to leave. When she tried to call 9-1-1 on her cordless phone, appellant grabbed the phone and threw it against the wall. When she tried to call 9-1-1 from the cordless base unit, appellant "snatched that out of the wall[.]" Appellant also "grabbed [her] cell

–13–

phone and threw it up against the wall." She said the 9-1-1 call apparently went through on the cordless base unit before appellant "yank[ed] the phone out [of] the wall" because the operator called back, she spoke with the operator, and the police were dispatched. Additionally, the complainant testified that she made the call "under the excitement of the event that had just happened." We conclude that the State satisfied the requirements of the excited utterance exception to the hearsay rule and the trial court did not abuse its discretion by admitting the recording.

We resolve issue two against appellant.

### CLOSING ARGUMENT

In issue three, appellant argues that the trial court deprived him of his right to counsel when it sustained the State's objection to a portion of his closing argument. Appellant's counsel attempted to argue that the State should have charged appellant with a misdemeanor, not a felony:

| | |
|---|---|
| [Defense Counsel]: | The State had a variety of things it could charge my client with. They could have charged my client with assaultive conduct and – |
| [State]: | Your Honor, I'm going to object to relevance. Improper. |
| The Court: | Sustained. It's the prosecution's decision on what charges they want to make. It's the prosecution's prerogative, not mine and not yours. |
| [Defense Counsel]: | There are quite a few charges that could have been filed against my client and – |
| [State]: | Your Honor, I'm going to object. This is improper argument. |
| The Court: | Sustained. |
| [State]: | Ask the jury to disregard. |
| The Court: | Jury will disregard. |

. . .

–14–

| | |
|---|---|
| [Defense Counsel]: | When you go back to the jury room, that power . . . completely shifts over to each of you. . . . I would say to you if one – if just one of you, two of you, however many of you – if you feel in your heart after listening to the evidence, going through it all, listening and evaluating, was she angry, fearful, and you think in summation that she's angry and not fearful, I say to you to stick to your gun, stick to your conviction. No one can make you change your vote. . . . I also would say to look through the evidence. Go through each of the charges. You'll be able to go through each charge of each alleged offense. He did not violate the protective order. . . . You don't put someone in jail unless you can prove it. That's part of that burden of proof that Ms. Hill was talking to you about. The State has the absolute burden or [sic] proof. It never shifts. It never shifts. That's just one example of how they painted this case, in my opinion, of [sic] too broad a brush. I think they should have charged him with harassment, which is a misdemeanor. . . . |
| [State]: | I'll object, Your Honor. Improper argument. |
| The Court: | Sustained, [defense counsel]. |
| [State]: | Ask the jury to disregard. |
| The Court: | Jury will disregard. |

Appellant contends that his "trial counsel was arguing how the actions by Appellant were not threatening and were not reasonably calculated to cause death or bodily injury" and that by sustaining the State's objection, the trial court deprived him of his constitutional right to counsel. Appellant argues that his counsel was attempting to properly argue "the true nature of Appellant's actions – harassment. [The complaining witness] testified Appellant called her work phone, cell phone, and home phone. He also sent numerous texts. . . . The correct characterization of Appellant's action was harassment."

An appellant is allowed to argue reasonable, good faith deductions from the evidence. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000); *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). This includes the appellant's opinion about what the evidence shows as long as the opinion is based on the record evidence and does not constitute sworn

–15–

testimony.  *See McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985).  Improper denial of jury argument may constitute denial of the right to counsel if the argument is one the appellant is entitled to make.  *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010).

Assuming without deciding that the trial court abused its discretion by sustaining the State's objection, we conclude that the error was harmless.  *See* TEX. R. APP. P. 44.2(a) (constitutional error is harmless if reviewing court determines beyond reasonable doubt that error did not contribute to conviction); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (constitutional errors governed by appellate rule 44.2(a)).

Appellant argues that his counsel "was unable to completely provide an assessment of the facts as applied to the applicable law" because he was not allowed to argue why appellant's "actions did not rise to the level of [s]talking."  We disagree.  Defense counsel argued in closing without objection that appellant "may have been annoying, he may have harassed her, but that's not what the State charged him with"; that appellant's "case is about fear or anger . . . that [the complainant] has to be in fear of bodily injury or death"; "[s]o that's what it comes down to, fear versus anger"; "[b]ut if it's anger, that's not stalking"; "[i]f it's fear, then that is stalking."  Counsel also argued, "If I'm afraid you're going to come kill me, why would I be talking to you on the phone?  Why would I send you text messages?  It demonstrates that she's angry. . . .  It also demonstrates that it's anger and not fear."

From our review of defense counsel's entire closing argument, we conclude that he was allowed to make, and did make, the argument that appellant's actions did not rise to the level of stalking, but the jury disagreed.  We conclude that any possible error in sustaining the State's objection was harmless beyond a reasonable doubt, and we resolve issue three against appellant.

**ALTERING INDICTMENT DURING TRIAL**

In issue four, appellant argues that the trial court erred by allowing the State to amend the indictment after the State rested its case in chief.

One of the allegations of stalking in the indictment was that appellant contacted six of the complainant's friends and made threats directed at the complainant. The State called two of those six friends as witnesses at trial. After resting its case in chief, the State moved to strike the other four names from the indictment. Appellant objected to the amendment "if it amounts to a variance." The trial court overruled appellant's objection, stating the names were "surplusage," and allowed the State to strike the four names.

On appeal, appellant argues that the names "were more than mere surplusage," were "essential to the State's elements of stalking," and the "entire paragraph was an entire manner and means alleged by the State in order to prove the elements of [s]talking." He contends that by alleging appellant contacted six of the complainant's friends "the State was attempting to plead a continuous course of conduct." But appellant did not raise this objection below, and he does not argue why the alteration was a variance or why the trial court abused its discretion by ruling it was not a variance. We conclude that this issue presents nothing for our review. *See* TEX. R. APP. P. 33.1. Additionally, the deletion of the four names did not affect appellant's notice of the charge against him or his ability to prepare his defense to the allegations in the indictment. *See Eastep v. State*, 941 S.W.2d 130, 134 (Tex. Crim. App. 1997). The indictment gave appellant notice that the State intended to prove that he contacted six of the complainant's friends; instead, the State proved he contacted two. *See id.* (because defendant already on notice of all alleged means of commission of alleged offense, abandonment of alternative means did not affect defendant's notice or ability to prepare defense) (overruled on other grounds by *Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000)). We resolve issue four against appellant.

## CONCLUSION

We affirm the trial court's judgment.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)

121074F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DAVID ANTHONY MCGEE, Appellant

No. 05-12-01074-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F12-00275-Y.
Opinion delivered by Justice Lang-Miers, Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of January, 2014.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE