

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00047-CR

JONATHAN LUTHER NICHOLS            APPELLANT

V.

THE STATE OF TEXAS            STATE

------------

### FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In three points, Appellant Jonathan Luther Nichols appeals his conviction of aggravated sexual assault of a child under the age of fourteen.  We affirm.

## II. Procedural Background

After a jury convicted Nichols of one count of aggravated sexual assault of a child younger than fourteen years of age, the State presented evidence of a

---

[1]*See* Tex. R. App. P. 47.4.

sexual offender notice for Nichols's prior conviction for the same offense, which the trial court found true and sentenced Nichols to lifetime confinement. This appeal followed.

## III. Sufficiency

In his first point, Nichols complains that the evidence is insufficient to support his conviction because "the testimony of the child was ambiguous, at best, lacked any credibility, and there was no evidence that [his] penis came into contact with the mouth of [the child]."

## A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we

2

may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

A person commits aggravated sexual assault of a child younger than fourteen years of age if the person intentionally or knowingly causes the sexual organ of another person, including the actor, to contact or penetrate the child's mouth. Tex. Penal Code Ann. § 22.021(a) (West 2011 & Supp. 2013).

**B. Evidence**

**1. The State's Evidence**

K.T., biological mother of A.H., the complainant, testified that in the summer of 2008, she and A.H. lived at her friend's house on Vicki Street in Haltom City. She testified that Nichols lived in the Vicki Street house for approximately two or three months and occasionally took care of A.H. while she was at work. There were times when Nichols was alone with A.H.

A.H. testified that she was around eight years old when she lived with K.T. at the Vicki Street house. She said that men would frequently come and spend

3

time with K.T. and then leave. She also stated that Nichols came over frequently because he was in a relationship with K.T. On one occasion, after K.T. had gone to buy cigarettes, A.H. was alone in her room when Nichols walked in, shut the door, and told her to turn around. A.H. turned around and saw Nichols standing with no shirt on and his pants around his ankles. Nichols told A.H. to "suck his dick" and that if she did not, he would take her away from K.T. A.H. testified that she "did what he told me to do." A.H. said that Nichols held her head with both of his hands during the assault and that something that "tasted very nasty" came out of Nichols's penis. A.H. testified that the same series of events happened a second time, except during the second assault, Nichols threatened to hurt her or K.T. if she did not comply with his demands. Nichols also repeatedly told A.H. not to tell anyone about the assaults.

A.H. testified that although CPS interviewed her on two separate occasions and specifically asked whether any sexual abuse had occurred, she did not tell them about Nichols's assault. She testified that she did not outcry until years later because she was too scared to tell anyone. After A.H. told her adoptive mother, B.L., about the assault, B.L.'s husband took A.H. to the police and filed a report.

Sergeant Kyle Barton testified that after the report was made, he assigned the case to Detective Tony Miller, who requested a photo lineup be prepared. Detective Miller testified that A.H. was immediately able to identify Nichols as the person who sexually assaulted her from the photo lineup.

4

Araceli Desmarais, the sexual assault nurse examiner, testified that she examined A.H. on April 7, 2011, and that A.H. had told her that she had been sexually abused two or three years prior to the examination by a man named Jon that her mother used to go out with. Desmarais testified that A.H. was able to describe both incidents of abuse in detail.

Kerry Paschall, a child forensic interviewer, testified that forensic interviewers typically look for two types of details: sensory and peripheral. Sensory details are those related specifically to the five senses, including touch, taste, smell, and sight. Peripheral details include the location of the assault, who was there at the time, what was going on around the child, and how the child arrived at that location. Paschall stated that these details allow an examiner to determine whether the child is giving a real account of the story versus simply "parroting back what someone has told them to say." Paschall testified that she interviewed A.H. on March 9, 2011, and that A.H. was able to give both sensory and peripheral details about the assault, which indicated that A.H.'s responses were not the product of coaching or coercion.

## 2. The Defense's Evidence

Donald Asselin, Nichols's stepfather, testified that Nichols lived with him, his wife, and his granddaughter during the summer of 2008. Asselin stated that, except for occasionally staying with his sister down the street, Nichols was living continuously in his home throughout the entire summer. On cross-examination,

5

Asselin testified that Nichols was not working and that he was in jail in either 2009 or 2010.

## C. Analysis

Nichols argues that the evidence is insufficient to sustain his conviction because A.H.'s testimony was ambiguous and lacked credibility.  Contrary to this assertion, Paschall, the forensic examiner, stated that A.H. provided both sensory and peripheral details of the assault during her interview, which indicated that A.H.'s story was not the product of coaching or coercion from an outside source.  Additionally, two years after the incident occurred, A.H. had no difficulty identifying Nichols as her attacker from a photo lineup prepared by Sergeant Barton, and Desmarais, the sexual assault nurse examiner, testified that A.H. was able to specifically described the two acts of oral copulation resulting in Nichols's ejaculation.  *See Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.— Fort Worth 2007, no pet.) (holding testimony of victim regarding sexual offense was sufficient evidence to support conviction); *see also* Tex. Code Crim. Proc. Ann. art. 38.07 (West 2005 & Supp. 2013) (providing that convictions for sexual offenses are supportable on the uncorroborated testimony of a victim under seventeen years of age). Accordingly, a rational jury presented with this evidence could have reasonably found A.H.'s testimony to be both credible and unambiguous.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman*, 350 S.W.3d at 595.

6

Nichols further argues that the evidence is insufficient to sustain his conviction because A.H. did not testify that his penis contacted her mouth as alleged in the indictment. He supports this argument by highlighting that A.H. merely testified that Nichols told her to "suck his penis" and that she complied. We note that A.H. also testified that Nichols held her head between his hands and that something that "tasted very nasty" come out of Nichols's penis during each assault. Although A.H. did not expressly state that Nichols's penis made contact with her mouth, we conclude that a rational fact finder could reasonably infer from the evidence presented that the actions described in the indictment did in fact occur.[2] *See Temple*, 390 S.W.3d at 360; *Sorrells*, 343 S.W.3d at 155. Because we resolve reasonable inferences in favor of the verdict, we hold that the evidence is sufficient to support the conviction. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360. Therefore, we overrule Nichols's first point.

## IV. Penal Code Section 12.42(c)(2)

In his second and third points, Nichols argues that the trial court erred by overruling his objection that penal section 12.42(c)(2) is unconstitutional because it violates his due process right and right to be free of cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments to the United

---

[2]The indictment stated that Nichols did "then and there intentionally or knowingly cause the mouth of [A.H.], a child younger than 14 years of age, who was not the spouse of the defendant, to contact the sexual organ of the defendant[.]"

States Constitution and article I, sections 13, 19, and 29 of the Texas Constitution.[3]

Nichols admits that current law is contrary to his argument, and he raises no new arguments and does not explain why the law should be re-examined or set aside. *See Moore v. State*, 54 S.W.3d 529, 540–41, 544 (Tex. App.—Fort Worth 2001, pet. ref'd) (stating that the legislature's interest in removing habitual sexual predators of children from society and protecting children is a rational and sufficient basis for the legislature to impose a mandatory life sentence for being convicted twice of sexually assaulting a child). Therefore, declining his invitation to re-examine the issue, we will continue to follow existing law and overrule his second and third points.

## V. Conclusion

Having overruled all of Nichols's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, CJ; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 6, 2014

---

[3]Nichols does not separately brief these claims or argue that the state constitution provides any greater protection than the federal constitution; therefore, we analyze his claims together under the federal constitution only. *See Lagrone v. State*, 942 S.W.2d 602, 612 (Tex. Crim. App.), *cert. denied*, 118 S. Ct. 305 (1997).

8