

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00458-CR

JAVIER GARCES PERALES A/K/A                                    APPELLANT
JAVIER PERALES

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1318452D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Javier Garces Perales a/k/a Javier Perales appeals his conviction for burglary of a habitation,[2] asserting, in two related issues, that the evidence was insufficient for a rational trier of fact to find all essential elements of

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 30.02(a)(1), (3) (West 2011).

the offense beyond a reasonable doubt. Because we conclude there was sufficient evidence, we affirm.

## Background Facts

In February 2013, while Jose Garza was working a nightshift, he received a phone call from his home security company regarding a break-in. The break-in had triggered an audible alarm. Upon Garza's direction, the security company contacted the police.

After 8 p.m., Richland Hills police officers arrived at Garza's home to investigate a possible burglary. Officer Edgar Piña and his partner viewed the front and back of the house, noticing some broken glass away from the house and that the backdoor was open. They went inside and searched the house, which appeared to them to be undisturbed.

Garza arrived soon thereafter. He surveyed his home and noticed that a gun, a ring, and a silver ESQ watch, which he had owned for years, were missing. He also noticed that his back door was unlocked, his back window's pane had been completely removed and broken, a rock that he had placed on the sidewalk was in his backyard, and the small jewelry "pillow" that his ESQ watch was normally wrapped around was also in his backyard.

Garza's home had a video surveillance system. In the span of approximately thirty minutes near the time of the burglary, the system recorded a man snooping around the outside of the house just minutes before officers

2

arrived there.  The man had a bald head and what appeared to be a tattoo,[3] and he was wearing a dark, long-sleeved shirt; lighter-colored pants; and white and black shoes.

On the morning after the burglary, a few miles away from Garza's house, appellant and his mother, Beatrice, entered a pawn shop to pawn a silver ESQ watch.  They received $75 for it.  Security footage from the pawn shop showed appellant with a bald head and a tattoo; a dark, long-sleeved shirt; lighter-colored pants; and white and black shoes.  Garza later confirmed that the watch belonged to him and retrieved it from the pawn shop.

A grand jury indicted appellant with burglary of a habitation.  He pled not guilty, but a jury found him guilty.  The trial court sentenced him to thirty-five years' confinement.[4]  This appeal followed.

### Evidentiary Sufficiency

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

---

[3]A detective testified that he could see a tattoo on the man in the home surveillance video.  Appellant argues that the footage from the home surveillance system does not show a tattoo.  At a minimum, the footage shows a large dark spot behind the man's right ear.  One of appellant's tattoos is behind his right ear.

[4]Appellant's indictment contained a habitual offender paragraph alleging that he had been previously convicted of two felonies.  At trial, appellant pled true to that paragraph, therefore raising his punishment range to confinement for twenty-five years to life.  *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2013).

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

4

A person commits burglary if, without the effective consent of the owner, the person enters a habitation and intends to commit or commits theft. Tex. Penal Code Ann. § 30.02(a)(1), (3). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of it. *Id.* § 31.03(a) (West Supp. 2013).

Appellant contends that there was insufficient evidence to identify him as the burglar and to link him to the stolen property. Garza's surveillance footage was not crystal clear, but it nonetheless displayed several characteristics of the burglar, such as his clothing, shoes, bald head, and what appeared to be a neck tattoo. The jury was able to compare the man in this footage to appellant both in the pawn shop video recording and in court.[5] *See Johnson v. State*, No. 06-13-00073-CR, 2013 WL 4470179, at *3 (Tex. App.—Texarkana Aug. 20, 2013, no pet.) (mem. op., not designated for publication) ("While the surveillance video recording from Cash America is not clear, the jury could see that the physical characteristics of the person representing himself as Johnson to Perez at the time of the transaction matched Johnson's appearance in court."); *Turnbow v. State*, No. 02-09-00438-CR, 2010 WL 4486223, at *5 (Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (mem. op., not designated for publication) (concluding that evidence was sufficient to prove a defendant's prior conviction because, in

---

[5]There is no dispute that appellant was in the pawn shop on the morning after the burglary with Beatrice, who pawned an ESQ watch that Garza testified matched his.

part, the "jury could compare [a] photograph on [a certified document] with [the defendant] who was present in the courtroom during trial"); *see also Murray v. State*, No. 02-11-00103-CR, 2012 WL 3030520, at *3 (Tex. App.—Fort Worth July 26, 2012, no pet.) (mem. op., not designated for publication) (holding that although windows that a witness saw a burglar in a home through were cloudy and foggy, "the trier of fact was free to conclude that the windows were at least clear enough" for the witness to make a proper comparison).

Several characteristics of the man in the home surveillance recording matched those of appellant in the pawn shop footage the next morning. The home surveillance recording showed a mark on the side of the man's neck that appeared to be a tattoo, and the location of this mark matched the tattoo on the side of appellant's neck as seen in the pawn shop footage. Appellant's clothing in the pawn shop footage—a dark, long-sleeved shirt and light-colored pants—matched the man's clothing in the home surveillance video. Not only did the clothing match, but also the man at the pawn shop, appellant, appeared to be wearing the same distinct, white and black patterned shoes as the man in the home surveillance footage.

Moreover, Maira Rocha, an employee of the pawn shop, testified that she met appellant and Beatrice when they pawned the watch. She stated that she saw a large tattoo on the side of appellant's neck when he was in the pawn shop, matching the apparent tattoo in the pawn shop footage. When asked if she

would recognize the man from the pawn shop if she saw him again, Rocha made an in-court identification of appellant.

Furthermore, evidence sufficiently matched the pawned watch to the watch that had been stolen from Garza's home the night before. Garza's silver watch was an ESQ with a black face and diamonds where numbers would normally be. Garza had removed multiple links from the watchband to make it smaller. Not only did Rocha's description of the pawned watch match Garza's description of the stolen watch,[6] but also the removed wristband links from Garza's watch matched the watch at the pawn shop.[7]

Therefore, considering the evidence indicating that appellant's head, clothing, shoes, and neck tattoo seen in the pawn shop footage matched traits of the man in the home surveillance recording; the in-court identification of appellant as the man who went to the pawn shop with his mother[8] and the watch on the day following the burglary; the fact that the pawned watch matched Garza's

---

[6]Rocha testified that appellant's mother pawned a silver ESQ watch with a black face and diamonds.

[7]Garza gave the two silver links from the watchband to a detective, who took them to the pawn shop and compared them to the pawned watch.

[8]Appellant did not call Beatrice to solicit an explanation of how she could have acquired the watch following the previous night's burglary. The jury could have reasonably inferred that appellant possessed the watch and transferred it to her. We note that a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant committed the burglary. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006).

7

description and wristband links;[9] and the fact that appellant's mother tried to pawn the watch on the day after the burglary with appellant standing nearby, we conclude a rational jury could have reasonably inferred that the man in the home surveillance footage was the burglar, and was appellant.

Appellant argues that the "largely circumstantial" evidence was insufficient to convict him. But circumstantial evidence may be enough to allow the jury to make a reasonable inference of guilt. *See Johnson*, 2013 WL 4470179, at *3 ("We conclude that the logical force of circumstantial evidence, when viewed in combination with the reasonable inferences from that evidence and in a light most favorable to the verdict, is sufficient for a rational fact-finder to determine that the essential elements of burglary of a habitation, including identity, were met beyond a reasonable doubt."); *see also Ramirez-Lira v. State*, No. 04-02-00498-CR, 2003 WL 22082190, at *1 (Tex. App.—San Antonio Sept. 10, 2003, no pet.) (mem. op., not designated for publication) (holding that direct evidence such as fingerprints or eyewitness testimony is not required).

---

[9]Appellant claims that since Garza did not know the serial number or other specific details about the watch, it was unreasonable for the jury to infer that the watch stolen was the watch recovered. But the jury had discretion to credit Garza's credibility and the manner in which he identified his watch, which he had owned for years preceding the burglary. *See Turro v. State*, 867 S.W.2d 43, 48 (Tex. Crim. App. 1993) (stating that it is the jury's "prerogative to weigh the evidence, to judge the credibility of the witnesses, and to consider the conflicting theories of the case").

Furthermore, appellant focuses to a large extent on what evidence was not presented[10] rather than reasonable inferences that could have been drawn from the evidence that was presented.   But the mere absence of some forms of evidence does not affect the legal sufficiency of the evidence actually introduced at trial.  *See Garcia v. State*, 563 S.W.2d 925, 927 (Tex. Crim. App. [Panel Op.] 1978) (affirming a sexual assault conviction based on the victim's testimony despite the absence of "objective scientific evidence" to indicate that a rape had occurred).

Viewing the evidence in the light most favorable to the verdict, we hold that the jury could have found all essential elements of appellant's burglary of Garza's house beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768.  We overrule appellant's issues.

### Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


PER CURIAM

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 31, 2014

---

[10]For example, appellant contends, "The [S]tate presented no evidence that [he] lived in the area, no evidence [his] car was nearby, no eye[-]witness identification from a witness at the scene of the burglary, no DNA, [and] no fingerprints . . . ."